14   100
15   466
15   467

# THEODORE BUNNELL, Appellant, v. THOMAS CARTER, Respondent.

### Mortgages—Transfer of Property—Subrogation—Discharge of Mortgagor.

Plaintiff sold certain property to defendant, who gave therefor his promissory notes, secured by a mortgage on the same. The defendant then sold the property to D, subject to the mortgage, and D sold it to C, under like conditions. Neither D nor C assumed or agreed to pay the mortgage, but the interest on the notes was paid by them. The time of payment of the notes was extended by the plaintiff, the mortgagee, without the knowledge or consent of the defendant, the mortgagor. The property was at all times, up to the maturity of the notes, worth the full amount of the mortgage, but declined greatly in value thereafter, and was worth less at the end of the time to which payment had been deferred than the mortgage. When the property was sold on a foreclosure, and the sheriff's sale showed a deficiency, plaintiff claimed a deficiency judgment against defendant, which was denied by the court: *Held* that, by the right of subrogation, the mortgagor, after conveyance, and after maturity of the mortgage, might pay the debt, and secure his safety upon the land, and that when the mortgagee and grantee extended the time of payment, without the knowledge and consent of the mortgagor they took away the latter's right of subrogation, and imposed upon him a new risk, not anticipated, and never consented to. The mortgagor stood to the end, as he was in the beginning, the sole principal debtor, but, on account of the depreciation of the value of the mortgaged security, liable only to the extent of the land, which depreciated during the time of the extension of the notes. The extension of time took away his right of subrogation, and discharged him to the extent of the value of the land. Being once discharged, he could not again be made liable. From the time of the extension, the risk of future depreciation fell upon the creditor, and he assumed the

risk 'of obtaining his money out of the land; and defendant was released from liability for the deficiency reported due on the mortgage.

(No. 724.    Decided Oct. 15, 1896.)

Appeal from the Third district court, Salt Lake county. Hon. LeGrand Young, *Judge.*

Action by Theodore Bunnell against Thomas Carter to foreclose a mortgage and to obtain a deficiency judgment. From a judgment denying the deficiency judgment, plaintiff appeals. *Affirmed.*

*Frank Pierce,* for appellant.

Neither Dooly nor Campbell assumed payment of the notes. They cannot, and never could, be held personally liable on them. If Carter is relieved, we are left in the anomalous position of having promissory notes without a principal or even a surety. This is not reasonable. Carter was primarily liable. He remains so until his liability is shifted to some other person. It never has been shifted. The respondent does not even contend that it was shifted to the grantees in the deeds. Neither of them assumed any liability. They were therefore neither principals nor sureties. *Elliott* v. *Sackett,* 108 U. S. 132.

Reason and precedent are against the position taken by the trial court. The United States supreme court had the same question before it, and decided that the mere conveyance of premises subject to an incumbrance did not change the primary liability of the original maker of the incumbrance, and that a shifting of liability could be accomplished only when the grantee assumed the outstanding obligation and the original payee accepted the assumption, and that an extension without an assumption did not relieve the maker of the note. *Sheperd* v.

*May*, 115 U. S. 510; *Maher* v. *Lanfrom*, 86 Ill. 518; 1 Jones on Mortgages, § 742; *Teeters* v. *Lamborn*, 43 Ohio St. 144.

*Williams, Van Cott & Sutherland*, for respondent.

The question is whether a mortgagor is discharged from liability for the depreciation of mortgaged property occurring during extensions of payment after the maturity of the mortgage debt, when payment of the debt is extended by the mortgagee and grantee of the mortgagor, without the consent of the mortgagor, when liability is not assumed by the grantee.

The case in 108 U. S. 132, cited by appellant, neither involves nor discusses the question at bar.

The case in 115 U. S. 510, is somewhat similar in principle to the case at bar, except in the very important particular that it was neither pleaded nor in the case *whether the security depreciated during the extension, or depreciated at all;* hence that court did not pass on that point, but that point is the only one for decision in this case. Suppose in the case at bar it did not appear that there had been any depreciation in value. Then, as a matter of course, the case would be reversed, because the mortgagor has a right to complain only to the extent of the depreciation in value of the mortgage security.

The authorities in 86 Ill. 518, 43 Oh. St. 144, and 1 Jones on Mortgages, § 742, do not discuss the question involved here; so far as 43 Oh. St. 144 does decide, it is practically opposed to a unanimous line of decisions to the contrary. See: *Union Mut. Life Ins. Co.* v. *Hanford et al.*, 27 F. R. 588; *George* v. *Andrews*, 45 Am. Rep. 706 (60 Md. 26); *Calvo* v. *Davies*, 73 N. Y. 211; *Murray et al.* v. *Marshall*, 94 N. Y. 611; *Metz* v. *Todd*, 36 Mich. 473; 1 Jones on Mortgages, sec. 742.

MINER, J.:

In February, 1890, appellant was the owner of prop·erty in Salt Lake City, and sold it to respondent, Thomas Carter, and took from him, as part payment, two promissory notes made by Carter, of $1,500 each, payable on or before February 5, 1891, and February 5, 1892, respectively, with annual interest. These notes were secured by a mortgage on the property, which was duly recorded. This action was brought to foreclose the mortgage, and for a deficiency judgment against Carter, the respondent. On April 2, 1890, Carter conveyed the premises to John E. Dooly, by general warranty deed, subject to the incumbrance of the $3,000 mortgage. On October 3, 1893, Dooly conveyed the premises to A. G. Campbell, by general waranty deed, subject to the same mortgage. Neither Dooly nor Campbell assumed or agreed to pay the mortgage. Carter, the respondent, paid no interest on the notes after conveyance to Dooly, nor was he at any time called upon or requested to pay any interest on either note. The interest was paid by Dooly or Campbell. On October 12, 1891, payment of the notes, by agreement between the plaintiff and the owner of the property, was extended to October 12, 1892, and afterwards likewise extended until February 5, 1894. These extensions were without the knowledge or consent of the respondent, Carter, the maker of the notes. The property covered by the mortgage was worth the full amount of the mortgage debt at all times between October 11, 1891, and the maturity of the last note, February 6, 1892; but since said time said property has depreciated in value, and is not now worth the mortgage debt. Upon a foreclosure and sale of the property, the sheriff returned a deficiency of $1,357.30. The court denied the appellant's motion for a deficiency judgment against Carter, the maker of the

notes, for this sum, and rendered its decree accordingly. From this decree and judgment, this appeal is taken.

While it is true that a purchaser who assumes the mortgage becomes as to the mortgagor the principal debtor, and the mortgagor a surety, yet, under such circumstances, the mortgagee, unless he assented to such an agreement, may treat both as principal debtors, and may have a personal decree against both. So where the purchaser, having assumed the payment of an existing mortgage, he thereby becomes the principal debtor, and the mortgagor a surety of the debt merely, and an extension of the time of payment of the mortgage, by an agreement between the holder of it and the purchaser, without the consent of the mortgagor, discharges the mortgagor from liability upon it. 1 Jones, Mort. §§ 741, 742; *Calvo* v. *Davies*, 73 N. Y. 211.

But the facts in this case are different from those stated. The question here presented is whether the mortgagor is discharged from liability on account of the depreciation of the mortgage security below the debt during the period covered by the extension of payment after maturity, where the payment of the debt was extended by the mortgagee and grantee of the mortgagor, without the consent of the mortgagor, and when liability was not assumed by the grantee. In this case, at the maturity of the second note, the premises were ample to discharge the debt, but the notes were extended for two and three years by the mortgagee and grantee, and during this period of extension the property depreciated, and was not worth the mortgage debt at the expiration of the time to which it was extended. While no strict and technical relation of principal and surety arose between Carter, the mortgagee, and his grantee, Dooly or Campbell, from the conveyance of the land subject to the mortgage, still an equity did arise, which could not be taken

from the mortgagor without his consent, and which bears a close resemblance to the equitable right of a surety, the terms of whose contract have been modified. Dooly or Campbell, as grantees of Carter, could not properly be denominated "principal debtors," because they owed no debt; and yet the land which they owned was the primary fund for the payment of the mortgage, and the mortgaged property stands liable to the extent of its value, for the payment of the mortgage. So, as grantee with respect to the land, and to the extent of its value only, they stand in the relation of principal debtors, and to this extent only the mortgagor has the equities of a surety. This result follows from the right of subrogation which inheres to the original conveyance from Carter to Dooly, made subject to the mortgage which Carter executed. As against Dooley, Carter had the right to require that the land should be first exhausted in payment of his mortgage. The amount of the mortgage was deducted from the purchase price, the tacit understanding, at least, being that the land should pay the debt as far as it would go. Through this right of subrogation, the mortgagor, after conveyance, and after maturity of the mortgage, may pay the debt, and secure his safety upon the land. This was a right that Carter had which could not be invaded with impunity. But it was invaded when the mortgagee and the grantee extended the time of payment without the knowledge or consent of Carter. They, for the time at least, took away Carter's right of subrogation, and imposed upon him a new risk, not anticipated and never consented to. The value of the land at the maturity of the notes was more than sufficient to pay the mortgage. By the extension, increased accumulations of interest were to be expected. The mortgagee had no right to modify or destroy Carter's original right of subrogation. In making the extension, he acted at his peril.

The grantees, Dooly and Campbell, stood in *quasi* relation of principal debtors, only in respect to the value of the land as the primary fund, and to the extent of its value. That value being less than the mortgage debt, they owed no debt or obligation whatever beyond it; but the mortgagor stood to the end, as he was in the beginning, the sole principal debtor, but, on account of the depreciation in the value of the mortgaged security, liable only to the extent of the value of the land, which is shown to have depreciated during the time of the extenson of the notes, and to be less in value than the face of the mortgage. The measure of his injury was his right of subrogation, and that was necessarily measured by the value of the land. The extension of time took away his right of subrogation, and discharged him to the extent of the value of the land. Being once discharged, he could not again be made liable. From the time of the extension of payment by the mortgagee, the risk of future depreciation fell upon the creditor, who, by the extension, practically took the land as his sole security to the extent of its then value, and assumed the risk of obtaining that value out of it in the future.

In *Murray* v. *Marshall*, 94 N. Y. 611, the court say: "For conceding the general rule to be that the surety is discharged utterly by a valid extension of the time of the payment, and that the mortgagor stands in the position, and has the rights of a surety, it must be steadily remembered that he can only be discharged so far as he is surety; that he holds that position only up to the value of the land, and beyond that is still principal debtor, without any remaining equities." The mortgagor has a right to complain in this case only to the extent of the depreciation of the value of the mortgage security, which decreased during the period of time covered by the extension of the time of payment, and which deprived him of

his right of subrogation, and so impaired his equitable rights as mortgagor as to discharge him from liability to the extent of the value of the land, which is shown to be less than the face of the mortgage, and to the extent of any deficiency judgment. *Murray* v. *Marshall*, 94 N. Y. 611; *Clark* v. *Mackin*, 95 N. Y. 346; Jones, Mortg. §§ 740-742; *Metz* v. *Todd*, 36 Mich. 473.

We are of the opinion that the plaintiff, by treating with the grantee in the manner stated, and extending the time of payment beyond maturity, to a period when the land depreciated in value below the face of the mortgage, and in dealing with the land, which constituted the primary fund for the payment of the mortgage in a manner to deprive the mortgagor of his right to resort to it for indemnity, the defendant, Carter, was released from liability for the deficiency reported due upon the mortgage. We find no reversible error in the record. The order and judgment appealed from are affirmed, with costs.

ZANE, C. J., and BARTCH, J., concur.