MUTUAL BENEFIT LIFE INSURANCE COMPANY V.
LINDLEY ET AL.

[No. 14,364. Filed November 23, 1932. Rehearing denied February 2, 1933. Transfer denied November 23, 1933.]

*William W. Hammond, C. Severin Buschmann, Leo M. Gardner, Howard A. Sommer, Lloyd McClure* and *Donald F. Elliott,* for appellant.

*Overson & Manning,* for appellees.

BRIDWELL, J.—Appellant brought this action against appellees, and others whose rights are not affected by this appeal, seeking to recover a judgment on certain promissory notes and to foreclose a mortgage given to secure the same.

Appellees filed their demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action against them. This demurrer was sustained and appellant excepted. Appellant was ruled to plead over and refused to plead further. Judgment was rendered in favor of appellees that appellant take nothing by its complaint against them and that they recover costs. The judgment rendered decreed a foreclosure of appellant's mortgage against all defendants to the complaint, including these appellees.

This appeal followed, the only error assigned being that the court erred in sustaining appellees' demurrer

to the complaint. We quote from appellant's brief as follows: "The only question involved in this appeal is whether a mortgagor, who has executed a promissory note secured by mortgage on real estate and subsequently conveys the real estate subject to the mortgage, is released from liability for a deficiency judgment by an extension of time given to the grantee by the mortgagee."

The facts alleged in the complaint and disclosed by the exhibits made a part thereof, necessary to consider in determining the question presented, may be summarized as follows: On or about April 29th, 1920, appellees, Fred J. Lindley and Harry McGonigal, became indebted to appellant in the sum of $16,000.00 and on said date executed and delivered to appellant their promissory note for said amount and thereby promised to pay to appellant on the first day of April, 1925, said principal sum with interest thereon at the rate of 5½ per cent per annum, payable semi-annually on the first days of April and October of each year according to the tenor and effect of ten interest coupon notes attached to said principal note, and further promising to pay interest at 8 per cent per annum on any installment of interest which shall not have been paid when due, and on the principal note after the same became due and payable, without any further relief from valuation and appraisement laws and five per cent attorney's fees. Said principal note also contains the following provisions: "In case of default in payment of any installment of interest or in the performance of any of the agreements contained in the mortgage given to secure the payment thereof, then, or at any time thereafter during the continuance of such default, the legal holder hereof shall have the option of declaring the entire debt immediately due and payable. The protest of this note or of the

interest coupon notes attached or notice of the exercise of said option, is expressly waived.

"One hundred dollars or any multiple thereof may be paid on account of the principal of this note at the maturity of any interest coupon note after one year from the date hereof."

On said 29th day of April, 1920, the appellees, to secure the payment of the indebtedness evidenced by said promissory notes, executed and delivered to appellant their mortgage on certain real estate owned by them located in Howard county, Indiana, which mortgage was filed for record and was duly recorded in the official mortgage records in the office of the county recorder of said Howard county, on the first day of May, 1920. By this mortgage appellees agreed to pay all legal taxes and assessments, levied under the laws of Indiana, on the real estate therein described, or on the mortgage, or on the note or debt secured; also to keep the buildings on said real estate in good repair and insured until the debt is fully paid. It is also provided therein that in case of the failure of appellees to do so, appellant might pay all such taxes and assessments, make such repairs, or effect such insurance, and might advance and pay any sum of money that, in its judgment, might be necessary to perfect the title to said real estate in appellees and preserve the security intended to be given, and that all moneys so paid and advanced, with interest thereon from the date of payment, at the rate of 8 per cent per annum, should be collectable as part of, and in the same manner as the principal sum secured. Appellees also agreed that in case of default in the payment of any installment of interest or in the performance of any of the agreements contained in the mortgage, then, or at any time thereafter during the continuance of such default, appellant should have the option of declaring the entire debt secured immediately due and payable and might pro-

ceed to foreçlose the mortgage. The mortgage also contains the following provision: "The mortgagors also agree to well and truly pay all and singular the sums of money hereby secured, without relief from valuation or appraisement laws, and with 5 per cent attorney's fees; and when paid the mortgage shall be void."

On June 8th, 1921, appellees conveyed by warranty deed the real estate described in the mortgage, to one Harry L. Draper, and this deed was duly recorded in the official deed records of Howard county, Indiana, on the 21st day of June, 1921. There is no allegation in the complaint disclosing whether the mortgage was mentioned in this deed.

On April 3rd, 1925, the said Harry L. Draper paid to appellant $2,000.00 on the principal note secured by the mortgage and an agreement dated March 27, 1925, was made between appellant and said Draper for an extension of time, said agreement being as follows:

"Crawfordsville, Ind., March 27th, 1925.

"The undersigned hereby covenants that he is the legal owner of the real estate conveyed to The Mutual Benefit Life Insurance Company by a mortgage dated April 29th, 1920, made by Fred J. Lindley and Nelle Lindley his wife and Harry McGonigal and Merle McGonigal his wife, and given to secure the payment of a note or bond for the sum of $16,000.00 payable April 1st, 1925, and extended to................, 19...., to the order of The Mutual Benefit Life Insurance Company, upon which note or bond it is hereby acknowledged there is due and unpaid the sum of $14,000.00 of principal money; and in consideration of the extension of the time for the payment thereof, the undersigned hereby promise and agree to and with The Mutual Benefit Life Insurance Company, to pay the principal sum due on said note or bond to said company, at its office in Newark, New Jersey, on the first day of April, 1930, and also the interest thereon at the rate of 5 per cent per

annum, in semi-annual payments during said term of extension, according to the tenor and effect of the 'extension coupons' hereto attached; and all conditions, covenants and agreements contained in said note or bond, and mortgage are hereby continued in force and ratified, and this agreement shall bear the same relation thereto and be construed therewith in the same manner as the original note or bond hereby extended; and in case of default in payment of any of said 'extension coupons,' or in case of nonpayment of taxes on said real estate, or breach of any of the aforesaid covenants, it shall be optional with The Mutual Benefit Life Insurance Company to declare said prinicipal sum immediately due and payable.

"It is understood and agreed that the sum of one hundred dollars or more, in even hundreds, may be paid on account of the principal of said note or bond at the maturity of any 'extension coupon,' after the expiration of the first year of the said extension period.

Harry L. Draper."

The ten interest coupon notes, each for the sum of $440, attached to the principal note of $16,000.00 were paid to appellant, and the first nine of the ten interest coupon notes, each for the sum of $350, attached to the said extension agreement, were also paid on or prior to the due date thereof. The interest coupon note falling due April 1st, 1930, was not paid; the $14,000.00 balance which, according to the terms of the extension agreement made by appellant and Draper, also became due and payable on April 1st, 1930, was not paid, and said amounts, with interest thereon, remain due and wholly unpaid. Taxes to the amount of $485.47 were paid by appellant on June 10th, 1930, and, under the terms of the mortgage, this amount with interest thereon, is also due appellant, and remains unpaid.

Appellant is the owner and holder of the principal

note, the mortgage, the extension agreement and of all obligations sought to be enforced, and the mortgaged premises, at the time of the filing of the complaint, were not of sufficient value to pay the debt due appellant.

There is no averment in the complaint as to the value of the real estate covered by the mortgage at the time of the making of the extension agreement.

Other facts alleged in the complaint relate to the rights and interests of other defendants thereto, and since such facts in no way affect the legal status existing between appellant and appellees they are omitted.

The complaint prays for a personal judgment against appellees and each of them in the sum of $17,000; that appellant's mortgage be adjudged to be the first, prior and best lien upon the real estate therein described, and that it be foreclosed against all defendants; that a receiver be appointed to take charge of the real estate, etc.

Appellant contends that since the complaint does not disclose whether the purchaser of the mortgaged real estate assumed the mortgage or took subject to it that we must infer that he took the land subject to the mortgage, and we agree with this view of the matter. We are also of the opinion that since the complaint is silent as to whether the extension of time given by the appellant to the grantee of appellees was with, or without, the knowledge and consent of the mortgagors (appellees herein), and since the extension agreement fails to show any such consent, that we must infer and assume that it was made without such knowledge and consent. Whether the purchaser assumed the mortgage or took subject to it, and whether the mortgagors consented to an extension of time given by the mortgagee to the grantee are of importance in determining the rights of the parties.

Where real estate is conveyed subject to a mortgage, the grantee does not, because of the conveyance, become

personally liable to discharge the mortgage indebtedness, but, in the absence of any showing to the contrary, the purchaser is deemed to have deducted the amount of the indebtedness from the purchase price, and the land in his hands becomes the primary source of funds out of which the encumbrance is to be paid. *Bunch* v. *Graves* (1887), 111 Ind. 351, 12 N. E. 514; *Gregory* v. *Arms* (1911), 48 Ind. App. 562, 96 N. E. 196; *Travers* v. *Dorr* (1895), 60 Minn. 173, 62 N. W. 269; *Bunnell* v. *Carter* (1896), 14 Utah 100, 46 Pac. 755; *Sine* v. *Lewis* (1910), 112 Minn. 403, 128 N. W. 468; *North End Sav. Bank* v. *Snow* (1908), 197 Mass. 339, 83 N. E. 1099; *Murray* v. *Marshall* (1884), 94 N. Y. 611.

When Draper, the grantee of appellees, bought the land subject to the mortgage, the land became as to said parties, the primary source of funds for the payment of the debt. While no strict or technical relation of principal and surety arose between the mortgagors and their grantee from the conveyance subject to the mortgage, an equity did arise which could not be taken from mortgagors without their consent, and which bears a very close resemblance to the equitable rights of a surety, the terms of whose contract have been modified. It can not be said that the grantee Draper became a principal debtor when he accepted the deed as he did not owe or assume the debt, but since the land is the primary source of funds for the payment of the debt, and since his property stands specifically liable to the extent of its value in exoneration of such debt, it does follow that the grantee, in respect to the land, and to the extent of its value, stands in the relation of a principal debtor, and to the same extent the grantors have the equities of a surety. If appellees were compelled to pay the debt, or, if, at maturity or afterwards they did pay it, they would be entitled to be subrogated

to the rights of appellant (the mortgagee) and to have a foreclosure of the mortgage and a sale of the land described therein to make themselves whole so far as the value of the land would do so. When the appellant extended the time of payment by a valid agreement with the grantee of appellees, made without the knowledge and consent of appellees, it, for the period of time covered by the extension given, took away from appellees their right of subrogation as appellees could only succeed to the rights of appellant and the facts pleaded in the complaint show that appellant, for a valuable consideration, had postponed, for a period of five years, any right on behalf of itself or any successor in interest, to foreclose the mortgage and have the land sold to liquidate the debt secured.

In the case of *Murray* v. *Marshall, supra,* the court expressed itself as follows: "When the mortgagor in this case sold expressly subject to the mortgage, remaining liable upon his bond, he had a right as against his grantee to require that the land should first be exhausted in the payment of the debt. Presumably the amount of the mortgage was deducted from the purchase price, or at least the transfer was made and accepted in view of the mortgage lien. Seller and buyer both acted upon the understanding that the land bound for the debt should pay the debt as far as it would go, and their contract necessarily implied that agreement. Through the right of subrogation the vendor could secure his safety, and that right could not be invaded with impunity. It was invaded. When the creditor extended the time of payment by a valid agreement with the grantee, he at once, for the time being, took away the vendor's original right of subrogation. He suspended its operation beyond the terms of the mortgage. He put upon the mortgagor a new risk not contemplated, and never consented to. The value of the land, and so the

amount to go in exoneration of the bond, might prove to be very much less at the end of the extended period than at the original maturity of the debt, and the latter might be increased by an accumulation of interest. The creditor had no right thus to modify or destroy the original right of subrogation. What he did was a conscious violation of this right, for the fact that he dealt with the grantee for an extension of the mortgage shows that he knew of the conveyance, and it left the land bound in the hands of the grantee. Knowing this he is chargeable with knowledge of the mortgagor's equitable rights, and meddled with them at his peril. But it does not follow that the vendor was thereby wholly discharged. The grantee stood in the quasi relation of principal debtor only in respect to the land as the primary fund, and to the extent of the value of the land. If that value was less than the mortgage debt, as to the balance he owed no duty or obligation whatever, and as to that the mortgagor stood to the end, as he was at the beginning, the sole principal debtor. From any such balance he was not discharged, and as to that no right of his was in any manner disturbed. The measure of his injury was his right of subrogation, and that necessarily was bound by the value of the land."

In other jurisdictions where cases have arisen presenting the question of the effect on the liability of the original mortgagor of an extension given by a mortgagee to a grantee who took subject to, but without assuming, the mortgage, we find conflicting opinions. It has been held that the rights of the mortgagee against the mortgagor are not in any manner affected by such an extension. See *Chilton* v. *Brooks* (1890), 72 Md. 554, 20 Atl. 125; *Gorenberg* v. *Hunt* (1931), 107 N. J. Eq. 582, 153 Atl. 587. It has also been held that, under such circumstances, the mortgagor has been released entirely. See *Brann* v. *Crew* (1920), 183 Cal. 728, 192 Pac. 531;

*Trust & Loan Co.* v. *McKenzie* (1896), 23 Ont. App. Rep. 167.

We are of the opinion that the better rule, and that supported by the weight of authority, and which is most conducive to justice between interested parties, is that where the grantee of the mortgaged property does not assume the mortgage, but merely takes subject to it, the grantor occupies, to the extent of the value of the land, the position of a surety, and that he is entitled to the rights of a surety, and where, as in the instant case, the owner of the mortgage by a valid contract with the owner of the real estate postpones the time for its payment beyond the time provided for therein, the effect of such agreement is to release the grantor and original mortgagor from liability to the extent of the value of the mortgaged property at the time of the extension. *Murray* v. *Marshall, supra; North End Sav. Bank* v. *Snow, supra; Travers* v. *Dorr, supra; Bunnell* v. *Carter, supra; Sine* v. *Lewis, supra;* see, also, note in 41 A. L. R., page 294.

Appellant's complaint alleges that it gave to the grantee of appellees an extension of time for the payment of the mortgage indebtedness. It is entirely silent as to the value of the land at the time of the extension given. From the facts pleaded the lower court could not, nor can this court determine whether appellant is entitled to a personal judgment, or otherwise. That depends on facts not alleged. If the value of the land at the time of the granting of the extension equalled or exceeded the amount of the mortgage indebtedness then no right to a personal judgment against appellees existed. If the value at that time was less than the amount of the debt the right to a personal judgment did exist for the deficiency only. Having pleaded the extension, and by so doing presented a state of facts which, when considered alone, leaves the court

unable to say that appellant is entitled to a personal judgment, it follows that the complaint does not state facts sufficient to constitute a cause of action against appellees.

One other contention of appellant requires consideration. It is asserted that the note sued upon is a negotiable promissory note and is therefore governed by the Uniform Negotiable Instruments Act of this state (Acts 1913, page 120, Sections 11360-11555, Burns 1926, §§12818-13014, Baldwin's 1934), and that section 119 of this act provides the only methods by which appellee may be discharged.

This contention can not prevail where the facts are such as are disclosed by the complaint herein, as the obligations and rights of the parties are controlled by the principles of equity heretofore discussed in this opinion, and not by the provisions of the act sought to be invoked.

The court below did not err in sustaining the demurrer to the complaint. Judgment affirmed.