**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF GARY, Plaintiff-Appellant,**

v.

**Michael ARENA and Grace Arena, Defendants-Appellees.**

No. 3–278A37.

Court of Appeals of Indiana, Fourth District.

July 22, 1980.

grant of summary judgment in favor of Michael and Grace Arena, (Arenas), in a foreclosure action brought by First Federal against the Arenas and their grantee, Sanford G. Richardson, as well as various lienholders.

First Federal asserts it was erroneous for the trial court to hold that altering the mortgages' interest rate was a material change which discharged the Arenas from personal liability on the mortgages. According to First Federal, a reservation of rights clause contained in the supplemental agreements to the mortgages executed by the Arenas and First Federal, permitted First Federal in its dealings with Mr. Richardson to increase the rate of interest on the mortgages without first affording the Arenas notice or obtaining their consent, while still retaining the Arenas' liability on the mortgages. The trial court, however, found the reservation of rights clause did not authorize First Federal to so act and entered judgment in favor of the Arenas.

We affirm the judgment of the trial court.

## FACTS

On May 26, 1965, the Arenas executed a note, mortgage, and supplemental agreement with First Federal. The note provided for a loan of $32,000 at an interest rate of 5¾%, and the mortgage securing this note provided for advances of up to $6,400. March 11, 1966, the Arenas were granted an advance of $5,100, and in consideration, they executed a modification and extension agreement which provided they would owe a new balance of $36,664.81, and the interest rate would be increased to 6%. A separate note, mortgage, and supplemental agreement were also executed by the Arenas in relation to this advance.

March 10, 1969, the Arenas conveyed the real estate which was the subject of both the May 26, 1965, and March 11, 1966, mortgages to Sanford G. Richardson by warranty deed subject to the two mortgages to First Federal.[1] The same day, without no-

Thomas E. Dolatowski, Glenn S. Vician, Borns, Quinn, Kopko & Lindquist, Merrillville, for plaintiff-appellant.

William F. Kane, Jr., Merrillville, for defendants-appellees.

CHIPMAN, Judge.

## CASE SUMMARY

First Federal Savings and Loan Association of Gary, (First Federal), appeals from a

---

1. Although the grantee's preliminary offer to purchase provided Mr. Richardson would "assume" the existing mortgages on the property, the warranty deed evidencing the consummat-

tice to or the consent of the Arenas, Mr. Richardson and First Federal entered into a modification and extension agreement, under the terms of which Richardson assumed both of the mortgages in question, and the time for payment was extended to twenty years; there was also a change in the interest rate from 6% to 7¼%. Thus, this agreement, signed only by Richardson and First Federal, was designed to be a modification of First Federal's earlier agreement with the Arenas by extending the time of payment and modifying the terms of payment to which the Arenas and First Federal had agreed.

After June 27, 1975, Richardson failed to make the payments due under the March 10, 1969, modification and extension agreement. As a result, a default on the mortgages and notes occurred and a suit in foreclosure was filed on behalf of First Federal against the Arenas, Richardson, and several lienholders.

### ISSUE

██ Before setting forth the issue before us, it appears imperative we reiterate that *all* allegations of error claimed to have occurred prior to the filing of the motion to correct errors must be *specifically* set forth within that motion in order to preserve the alleged error for appellate review. In First Federal's motion to correct errors it raised one broad allegation of error. On appeal, First Federal has attempted to raise tangential issues not heretofore specifically presented. Having sown the seed to bring forth one allegation of error, First Federal

can not expect to now cultivate a garden of many on appeal. We, therefore, confine our review to whether the entry of summary judgment was "contrary to the great weight of authority and law which has held that in a factual situation of the type that exists in this case, there should be no discharge of personal liability as to the original mortgagors, the Arenas." [2] Thus, the sole question which has been duly and properly preserved for our consideration is the propriety of granting the Arenas' motion for summary judgment.

██ Before considering the merits of the respective arguments, we note the standard of review involved in a summary judgment. It is well settled that a motion for summary judgment may be sustained only where the pleadings and other matters filed with the court reveal no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C); *Randolph v. Wolff*, (1978) Ind.App., 374 N.E.2d 533; *Johnson v. Motors Dispatch, Inc.*, (1977) Ind.App., 360 N.E.2d 224; *Letson v. Lowmaster*, (1976) 168 Ind.App. 159, 341 N.E.2d 785. Moreover, in determining whether a genuine issue of material fact exists, the facts set forth by the opponent must be taken as true, and all doubts must be resolved against the proponent of the motion. *Crase v. Highland Village Value Plus Pharmacy*, (1978) Ind.App., 374 N.E.2d 58; *Levy Company, Inc. v. State Board of Tax Commissioners*, (1977) Ind. App., 365 N.E.2d 796; *Union State Bank v.*

---

ed contract recited the conveyance was "subject to" the Arenas' mortgages to First Federal.

Based upon the general rule that any inconsistencies between the terms in the preliminary contract and the deed are to be settled by the deed alone, since all prior negotiations are considered merged in that instrument, *Wayne International Building & Loan Ass'n v. Beckner*, (1922) 191 Ind. 664, 134 N.E. 273; *Guckenberger v. Shank*, (1941) 110 Ind.App. 442, 37 N.E.2d 708, along with the fact none of the parties argued there was any mistake in drawing the deed or that they intended to make it read other than as in fact it was written, we have concluded, for purposes of this opinion, the conveyance was "subject to" the mortgage.

2. It must be noted, First Federal only argued there should have been no discharge. First Federal did not, alternatively, raise the issue of whether, if a discharge was proper, the extent to which the Arenas were discharged was erroneous; therefore, we have not been asked to address whether the trial court acted correctly in completely discharging the Arenas from all personal liability or whether the extent of their discharge should, for example, have been limited to the value of the land in question when Mr. Richardson and First Federal executed the Modification and Extension Agreement.

*Williams,* (1976) Ind.App., 348 N.E.2d 683. With this standard of review in mind, we now address First Federal's appeal.

## DECISION

■ CONCLUSION—By reason of an expressed provision to that effect in the supplemental agreements between the Arenas and First Federal, the Arenas were not released from liability upon extension of the mortgage in the agreement between Mr. Richardson and First Federal; however, this agreement not only extended the time for payment, but it also modified the terms of payment by increasing the interest rate. It is our opinion the trial court properly found the Arenas had not consented to such a change in interest rates and, therefore, were released from liability.[3] Arenas' grantee and First Federal could not modify the original mortgagors' agreement without the mortgagors' consent.

The focal point in this controversy is the meaning to be accorded a reservation of rights clause which appeared in the supplemental agreement executed by the Arenas when they obtained the initial mortgage and later secured the advance. The agreement provided:

"THE UNDERSIGNED, Michael Arena and Grace Arena, Husband and Wife, . . ., hereinafter referred to as the Mortgagor, hereby executes and delivers to FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF GARY, . ., hereinafter referred to as the Mortgagee, this Supplemental Agreement, pursuant to a Mortgage executed and delivered

concurrently herewith, and this Supplemental Agreement is expressly made a part of said Mortgage, . . . . 
THE MORTGAGOR COVENANTS:

. . . . .

6. That in the event the ownership of said property or any part thereof becomes vested in a person other than the Mortgagor, the Mortgagee may, without notice to the Mortgagor, deal with such successor or successors in interest with reference to this mortgage and the debt hereby secured in the same manner as with the Mortgagor, and may forbear to sue or may extend time for payment of the debt, secured hereby, without discharging or in any way affecting the liability of the Mortgagor hereunder or upon the debt hereby secured;"

First Federal asserts the reservation of rights language set out above permitted it, in dealing with Richardson, to increase the interest rate and extend the time of payment without first obtaining the Arenas' consent while still retaining their liability. Appellant takes the position that the portion of paragraph six providing for no discharge modified forbearing to sue and extending time for payment as well as dealing in the same manner as with the mortgagor; therefore, since the interest rate was increased when the Arenas were given their additional advance, according to First Federal, raising the interest rate in its agreement with Richardson would merely be dealing with him in the same manner as it had dealt with the Arenas and, consequently, should not result in a discharge.

---

**3.** If the full amount due on foreclosure did not exceed the value of the property at the time of the execution of the Modification and Extension Agreement, it was proper for the trial court to completely discharge the Arenas. *Mutual Ben. Life Ins. Co. v. Lindley,* (1932) 97 Ind.App. 575, 183 N.E. 127; Stevens, *Extension Agreements in the "Subject-To" Mortgage Situation,* 15 *U.Cin.L.Rev.* 58 (1941). As a corollary, if the value of the land at the time of this agreement was less than the amount of the mortgage on the property, the Arenas should have remained liable to the extent of this difference.

Although it was improper for the trial court to hold there was a complete discharge without also holding the value of the land at the time of

the March 10, 1969, agreement fully supported the mortgage loan, First Federal never raised any error regarding the extent to which the Arenas were discharged, *see* note 2 *supra;* consequently, we can only assume the amount due on foreclosure on March 10, 1969, would have been less than the value of the property at that time.

We note, since Mr. Richardson offered to purchase the real estate in question for $37,000, and the aggregate balance remaining unpaid when Mr. Richardson and First Federal executed the Modification and Extension Agreement was $33,393.83, it appears the value of the land, in fact, did exceed the amount due, and thus, a complete discharge would have been proper.

The Arenas, on the other hand, contend the reservation of rights clause in the Supplemental Agreement made no reference to the alteration or modification of the interest rate but rather, referred only to an extension of the time for payment or the decision to forbear to sue.

While it is true paragraph six indicates First Federal could deal with successors in interest to the mortgage in the same manner as with the mortgagor, we hold the resolution of whether this meant First Federal and the Arenas' grantee would be permitted to increase the interest rate without affecting the Arenas' liability was a question of law for the trial court since the rules applicable to construction of contracts generally apply to the construction of an agreement whereby a purchaser of mortgaged premises assumes the payment of the mortgage. 20 I.L.E. *Mortgages* § 193.

As a rule, the interpretation, construction, or legal effect of a contract is a question of law for the trial court, not a question of fact. *Kleen Leen, Inc. v. Mylcraine,* (1977) Ind.App., 369 N.E.2d 638. However, when the terms of the contract are ambiguous *and* their meaning is to be determined by extrinsic evidence, the construction of the contract is for the jury. Conversely, where the ambiguity in the contract arises by reason of the language used and not because of extrinsic facts, the construction of the contract is a question of law. *Wilson v. Kauffman,* (1973) 156 Ind. App. 307, 296 N.E.2d 432. Thus, whenever summary judgment is granted based upon the construction of a contract, the trial court has determined as a matter of law that the contract in question is not so ambiguous or uncertain that resort must be made to extrinsic evidence in order to ascertain the contract's meaning.

The essence of the appeal before us then is whether the trial court correctly concluded that as a matter of law, the scope of the reservation of rights clause found in paragraph six did not include altering or modifying the interest rate, and consequently, First Federal did not reserve the right to modify and increase the interest rate from 6% to 7¼% without the consent of the Arenas. We hold the trial court's entry of summary judgment in favor of Arenas was proper.

When the Arenas conveyed the real estate to Richardson subject to the existing mortgages to First Federal, the land became as to said parties, the primary source of funds for payment of the debt. *Mutual Ben. Life Ins. Co. v. Lindley,* (1932) 97 Ind.App. 575, 183 N.E. 127. No technical relation of principal and surety arose between the Arenas and their grantee from this conveyance, but an equity did arise which bears a close resemblance to the equitable rights of a surety. As a result, the Arenas assumed a position analogous to that of a surety, and the grantee became the principal debtor to the extent of the value of the land conveyed. *Mutual Ben. Life Ins. Co. v. Lindley, supra* ; Warm, *Some Aspects of the Rights and Liabilities of Mortgagee, Mortgagor and Grantee,* 10 *Temple L.Q.* 116 (1936).

While a mortgagor in such a situation may consent in advance to future modifications or agree his liability will not be discharged by subsequent agreements between his grantee and the mortgagee, such clauses are to be strictly construed against the mortgagee, *see* Friedman, *Discharge of Personal Liability on Mortgage Debts in New York,* 52 *Yale L.J.* 771, 788 (1943), since it would be unjust to subject the mortgagor to a new risk or material change to which he has not consented. Consequently, a reservation of rights clause will not prevent a discharge of liability where the modification in question exceeds the scope of the consent in the clause. This should come as no surprise since the mortgagor occupies the position of a surety, and the law of suretyship provides that a surety is entitled to stand on the strict letter of the contract upon which he is liable, and where he does not consent to a variation and a variation is made, it is fatal, *see American States Insurance Co. v. Floyd I. Staub, Inc.,* (1977) Ind.App., 370 N.E.2d 989; *White v. Household Finance Corp.,* (1973) 158 Ind.App. 394, 302 N.E.2d 828; therefore, an agreement between the principals for a higher interest than called for by the original contract will, if made without the

surety's consent, release him from all liability. 74 Am.Jur.2d *Suretyship* § 47 (1974); *see also* 4 Am.Jur.2d *Alteration of Instruments* § 55 (1962).

The fact First Federal dealt with the grantee shows it knew of the Arenas' conveyance, and knowing of this conveyance, it was incumbent upon First Federal not to deal with the grantee in such a manner as would jeopardize or alter the surety-principal relationship. Warm, *Some Aspects of the Rights and Liabilities of Mortgagee, Mortgagor and Grantee,* 10 *Temple L.Q.* 116 (1936). The modification and extension agreement in question provided Mr. Richardson would personally assume the mortgage debt and thus, inured to the benefit of First Federal, but at the same time, the terms of the Arenas' earlier mortgage were changed to the detriment of the Arenas. If this increase in the interest rate was beyond the scope of the reservation of rights clause, the Arenas were thereby discharged, and the grantee became the sole debtor on the mortgages.

We hold the trial court properly rejected First Federal's argument that by increasing the interest rate it was merely dealing with Mr. Richardson in the same manner as it had dealt with the Arenas, and therefore, according to paragraph six, the Arenas should not have been discharged.

While it is true paragraph six indicated First Federal could deal with successors in interest to the mortgage in the same manner as with the mortgagor, this provision did not say First Federal could do so with impunity. We agree with the trial court that the portion of this paragraph providing for no discharge only modified forbearing to sue or extending the time for payment; consequently, the mortgagor would not be discharged from liability if the mortgagee simply extended the time for payment of the debt or opted not to bring suit, but these were the only situations where the mortgagee knew to a certainty his actions in dealing with the grantee would not discharge the mortgagor. The reservation of rights clause in paragraph six did not apply to activities which allegedly came within the ambit of dealing in the same manner as with the mortgagor. At the risk of being redundant, we again note, paragraph six stated in part:

"6. [T]he Mortgagee may, without notice to the Mortgagor, deal with . . . successors in interest with reference to this mortgage and the debt hereby secured in the same manner as with the Mortgagor, *and* . . . ." (our emphasis)

The punctuation used clearly sets this portion of paragraph six apart from the remainder of the paragraph which then goes on to provide the mortgagee

"may forbear to sue or may extend time for payment of the debt, . . . , without discharging or in any way affecting the liability of the Mortgagor hereunder or upon the debt hereby secured."

In order to give the reservation of rights clause the expanded application urged by First Federal so that it also applied to dealing in the same manner as with the mortgagor, it would be necessary to ignore the punctuation used and the maxim that such clauses should be strictly construed against the mortgagee. Further, such a construction would change the reservation of rights provision from applying in two definite situations to an open-ended invitation to argue there was no discharge because the mortgagee either could have or in fact had dealt with the mortgagor in the same manner; the possible activities which arguably could then come within this clause's application would be indefinite.

We hold the construction of the supplemental agreement between the Arenas and First Federal was a question of law for the trial court, which correctly held paragraph six did not authorize First Federal and the Arenas' grantee to alter the terms of payment on the mortgage debt by increasing the interest rate without affecting the Arenas' liability.

Judgment affirmed.

MILLER, P. J., and YOUNG, J., concur.