## KINNEY, TRUSTEE, *v.* HEURING ET AL.

[No. 6,895. Filed April 7, 1909. Rehearing denied June 25, 1909. Transfer denied November 18, 1909.]

1. DESCENT AND DISTRIBUTION.—*From Wife to Husband.*—*Suretyship Debts.*—*Charging Against Husband.*—Where a wife mortgages her real estate to secure her husband's debt, such debt, upon her death, is chargeable wholly upon his one-third interest in her real estate. p. 594.

2. MORTGAGES.—*Buying Property Subject to.*—*Effect.*—*Descent and Distribution.*—Where a grantee purchases property subject to a mortgage, but does not agree to pay such mortgage, the debt evidenced by such mortgage is not chargeable to such grantee's estate. p. 595.

3 MORTGAGES.—*Conveyances Subject to.*—*Payment.*—*Subrogation.*—Where an owner conveys mortgaged property without any express provision with reference to the mortgage debt, the grantee,

upon payment of same, is subrogated to the rights of his grantor, as against the mortgagor, and equity will apply thereto the principles governing the relations of principal and surety. p. 596.

4. DEEDS.—*Mortgages.*—*Purchasing Land Subject to.*—*Payment.*— *Subrogation.*—A grantee who purchases lands, the deed expressly reciting that it is taken subject to a mortgage, is not personally liable for the mortgage debt. p. 597.

5. DESCENT AND DISTRIBUTION.—*Husband to Wife.*—*Debts.*—*Liens.* —A wife is entitled to one-third of her husband's real estate free from the husband's ordinary debts, and where specific liens attach to the land, she has the right to have the other two-thirds of the real estate, and all of the personal estate, sold to satisfy same before her share is taken. p. 597.

6. DESCENT AND DISTRIBUTION.—*Wife to Husband.*—*Debts.*—One-third of a deceased wife's lands descends to the husband, but such share is burdened with its proportionate share of the wife's debts contracted prior, as well as subsequent, to their marriage. *Roach* v. *White*, 94 Ind. 510, distinguished. *Kemph* v. *Belknap*, 15 Ind. App. 77, and *Weaver* v. *Gray*, 37 Ind. App. 35, limited. pp. 598, 600, 602.

7. DESCENT AND DISTRIBUTION.—*Wife to Husband.*—*Debts.*—*Statutes.*—The statute (§3016 Burns 1908, Acts 1891, p. 71, §1, being a reënactment of 1 R. S. 1852, p. 248, §22, §2485 R. S. 1881), providing that one-third of the deceased wife's lands shall descend to the husband, subject, however, to its proportion of her debts contracted before marriage, does not free such husband's share from the payment of its proportion of debts created by the wife after marriage, since at the time of the passage of the original statute a wife could not contract debts, and therefore the mention of debts created prior to marriage did not impliedly exclude subsequently contracted debts. p. 600.

8. HUSBAND AND WIFE.—*Children.*—*Support.*—Ordinarily it is the husband's duty to support his family. p. 601.

9. DESCENT AND DISTRIBUTION.—*Husband to Wife.*—*Statutes.*—*Liberal Construction.*—Statutes giving to widows certain rights in their husbands' property are liberally construed in favor of such widows. p. 601.

10. WILLS.—*Married Women.*—A married woman can, by will, deprive her children of any portion of her estate but cannot so deprive her husband. p. 601.

11. STATUTES.— *Descent and Distribution.*— *Wife to Husband.*— *Court Decisions.*—*Stare Decisis.*—Decisions of long standing in regard to the descent of property from a wife to her husband become rules of property and should not be disturbed by the courts, a change therein necessarily relating back to the enactment of the statute, thus causing great confusion. p. 602,

12. STATUTES.—*Reënactment.*—*Descent and Distribution.*—Section one of the act of 1891 (Acts 1891, p. 71, §3016 Burns 1908), literally reënacting 1 R. S. 1852, p. 248, §2485 R. S. 1881, did not change the meaning thereof, though such act also empowered the husband to elect to take under his wife's will, or under the statute. p. 603.

From Superior Court of Marion County (71,286); *James M. Leathers,* Judge.

Suit by Collie E. Kinney, as trustee in bankruptcy of the estate of John Martin, against Martha E. Heuring and others. From the decree entered, plaintiff appeals. *Affirmed.* (Motion to dismiss appeal overruled, see 44 Ind. App. 263).

*Collie E. Kinney, pro se.*
*Charles Martindale,* for appellees.

RABB, J.—The questions presented in this case arise upon exceptions to conclusions of law stated by the court upon a special finding of facts.

The facts presented by the special findings are as follows: Mary W. Martin died intestate on April 14, 1905, leaving as her sole heirs, John Martin, her husband, and the appellees, her children. At the time of her death she was the owner in fee simple of the premises described in the complaint, the title to all of which she acquired by conveyances, through the intervention of a trustee, from her husband, and certain of the premises described in the complaint were then subject to a mortgage executed by the intestate and said John Martin, while the title to the property was still in his name, and to secure notes executed by him, which mortgage and notes were owned by appellee Union Trust Company, upon which there was due the sum of $3,753.50; that certain other parcels of said premises were subject to a mortgage in favor of appellee Phoenix Mutual Life Insurance Company, executed by said John Martin and the intestate, while John Martin still held the title to said premises, and which mortgage was given to secure notes executed by him to said Phoenix Mutual

Life Insurance Company, and upon which, at the time the decree herein was rendered, there was due to said Phoenix Mutual Life Insurance Company the sum of $3,393.25. Said premises were also subject to a mortgage executed thereon by the intestate, her husband, John Martin, joining therein, to appellee Emeline Earnshaw, to secure notes executed by the intestate and her husband and payable to Emeline Earnshaw for the principal sum of $2,000, and upon which there was due, at the time the decree herein was entered, the sum of $2,342.65 The proceeds of the last of said mortgage notes were received and used by said John Martin for his own benefit, and for the support of his family, including the intestate. Certain parcels of the real estate of which the deceased died seized were, through the intervention of a trustee, conveyed by said John Martin to the intestate, and received by her in payment and satisfaction of an indebtedness due to her from said John Martin. Said deed was made subject to all existing incumbrances upon the real estate conveyed. Subsequently, on September 24, 1901, John Martin, through the intervention of trustees, duly conveyed the residue of said real estate, mentioned and described in the complaint, to the intestate, who took the same subject to all incumbrances then existing thereon. Said property was subject to certain mechanics' liens for repairs put upon the dwelling-house on said premises, while the title to the same was in the intestate, and certain liens for taxes for which the premises had been sold.

On October 24, 1905, the surviving husband filed his voluntary petition in bankruptcy, and was by the District Court of the United States for the District of Indiana, duly adjudged a bankrupt, and the appellant was duly appointed as trustee of his estate, and as such brought this suit to have said real estate partitioned. His right to partition was not denied, and under the proceedings the premises, not being susceptible of division, were sold by a commissioner appointed by the court for that purpose, and the questions in controversy

arise over the marshaling of assets to pay said liens thereon, and the distribution of the funds arising from the sale, as between the appellant and the appellees, the children and heirs of the intestate Mary Martin, appellant's contention being that he is entitled to one-third of the proceeds arising from the sale of the land after the payment of the costs of the proceedings, as against the heirs of Mary Martin, and that the entire mortgage, mechanics' and tax liens resting on the premises shall be paid out of that interest in the funds inherited by said children.

On the other hand, the appellees, the children of the intestate, contend that as between appellant and themselves they are entitled to have the entire sum due upon the Earnshaw mortgage charged to the appellant's interest in the fund, and that the other liens resting upon the premises shall be charged against the common fund, the appellant and each child's interest in such fund bearing its proportionate part of such payment. No questions arise in the case between appellant or the appellees, the children and heirs of the intestate, and the parties entitled to the liens upon the property, and no question is made but that appellant in this case, so far as the questions arising here are concerned, stands precisely upon the same footing as his assignor, the husband of the intestate, as he is entitled to all the rights, either in law or equity, that such husband would have been entitled to as against the children, and is subject to all the duties and obligations to which the husband would be subject.

The questions that are presented here upon the proper method of charging the sum due upon the Earnshaw mortgage out of the funds in question, and the rights and equities of the parties as against each other in reference thereto, have been settled by this court in the case of *Herbert* v. *Rupertus* (1903), 31 Ind. App. 553. It was there held that where the wife joins with her husband in the execution of a mortgage on her separate real estate, to secure

a loan made ostensibly to the wife, but where the husband in fact receives the benefit of the proceeds of the loan, even though he has not joined in the execution of the note secured by the mortgage, upon the death of the wife the mortgage debt should, as between the husband and the children, be charged to the interest taken by the husband in the mortgaged premises.

The case at bar in some respects presents facts more favorable to the appellees' contention than the case cited. The special findings here show that the debt secured by the Earnshaw mortgage was, in fact and in law, the husband's debt, and the wife and her property but sureties therefor. He not only was a party to the mortgage, but also to the notes, and received the proceeds of the loan in his own hands, and used them for his own benefit. He cannot be heard in a court of equity to say that any part of his own debt shall be charged upon the interests of his cotenants in their common property, any more than he could do so if they had joined with him, after the death of the wife and mother, in a mortgage upon the common property received by inheritance from her, to secure his own individual debt. No error intervened in charging the entire amount of the Earnshaw mortgage upon the interest of the appellant in the funds for distribution.

Nor is it easy to draw a clear distinction between the equitable rights and liabilities of these parties with reference to the mortgages in favor of the Union Trust Company and the Phoenix Mutual Life Insurance Company, and their rights and liabilities with reference to the Earnshaw mortgage. The trust company's mortgage and the insurance company's mortgage were executed by the appellant's assignor, the husband, while he owned the property. They were given to secure his own personal obligations, and the decedent, Mary W. Martin, the one from whom all the parties claim, became the owner of the property

subject to these mortgages. As we understand the special findings, the deeds by which the decedent acquired title to the premises expressly recited that the title thereby conveyed was subject to the said mortgages. But she did not by any contract, or by any provision in the deeds, assume and agree to pay the debts thereby secured. Therefore these mortgage debts are not her debts, contracted either before or after her marriage. They are not debts provable against her estate, but they continued to be the husband's personal debts. The only relation the intestate sustained toward the same was that the property she acquired she held subject to the payment of these specific liens.

Ordinarily, where the owner of lands subject to a mortgage to secure his debt conveys the mortgaged premises, or any part of the same, to a purchaser, without any express

3.    provision with reference to the mortgage debt, such purchaser takes the same subject, of course, to the mortgage, but so far as the rights of the mortgagor and his grantee are concerned with reference to such mortgage debt the mortgagor will be regarded as the principal in such debts, and the land conveyed standing as his surety therefor; and if the land is sold to pay the debt, the owner will be entitled in equity to be subrogated to the rights of the grantor, as against the mortgagor, and equity will work out his proper remedy in accordance with the rules that govern the relation of principal and surety. *Hahn* v. *Behrman* (1880), 73 Ind. 120; *Day* v. *Patterson* (1862), 18 Ind. 114; *Williams* v. *Perry* (1862), 20 Ind. 437, 83 Am. Dec. 327; *Aiken* v. *Bruen* (1863), 21 Ind. 137; *Houston* v. *Houston* (1879), 67 Ind. 276; *Aurora Nat. Bank* v. *Black* (1891), 129 Ind. 595; *Bank of Commerce* v. *First Nat. Bank* (1898), 150 Ind. 588; *Jenkins* v. *Craig* (1899), 22 Ind. App. 192; *Diamond Flint Glass Co.* v. *Boyd* (1903), 30 Ind. App. 485.

We are not prepared to say, however, that where a grantee takes a conveyance of real estate by deed expressly reciting

that the title is taken subject to certain specific liens

4. thereon, such grantee, upon the sale of the premises to pay such debt, will be entitled to such right of subrogation as against the mortgagor whose personal obligation has thus been paid by the sale of the mortgaged premises. But it is clear that as against such grantee no personal obligation to pay the mortgage debt exists.

Section 2990 Burns 1908, §2467 R. S. 1881, provides that the real and personal property of any person dying intestate shall descend to his or her children in equal proportions.

Section 3014 Burns 1908, §2483 R. S. 1881, provides that if a husband die testate or intestate, leaving a widow, one-third of his real estate shall descend to her, in fee simple, free from all demands of creditors.

Section 3016 Burns 1908, Acts 1891, p. 71, §1, provides that if a wife die, testate or intestate, leaving a widower, one-third of her real estate shall descend to him, subject, however, to its proportion of the debts of the wife contracted before marriage.

Appellant insists that the same rule should govern the court in the construction of §3016, *supra,* defining the rights of the widower in the lands of the deceased wife, that

5. are applied by the court to §3014, *supra,* defining the rights of the widow in the lands of her deceased husband; and our attention is called to the numerous authorities holding that, as against all other heirs and general creditors, the widow is entitled to have the personal estate of the decedent and two-thirds of the real estate descending to other heirs exhausted in the satisfaction of liens and encumbrances against such land for the protection of her one-third interest therein, even though the same is, as between the widow and the lien holder, subject to the payment of such lien; and this rule of construction, as applied to the rights of the widow, we recognize as firmly and correctly settled in this State.

We are also cited to the cases of *Roach* v. *White* (1884),

94 Ind. 510, *Kemph* v. *Belknap* (1896), 15 Ind. App. 77, and *Weaver* v. *Gray* (1906), 37 Ind. App. 35, in support of appellant's contention that the same rule applies in the construction of the statutes defining the rights of the surviving husband in the wife's land that applies in the construction of the statute defining the surviving wife's rights in the deceased husband's lands.

The case of *Roach* v. *White, supra,* involved a controversy between the surviving husband and a devisee of the wife, the will giving the entire estate in the premises in dispute to the devisee. The husband claimed that, notwithstanding the will, under the section of the statute here involved he took one-third of the premises by descent. No question of the liability of his interest to pay debts or liens was in any manner involved in the case. The expression of the court, in deciding the question that the right of the surviving husband to a one-third part of the real estate of which his wife died seized is absolute, has no special bearing on the question of the liability of such interest to pay the debts of the wife, or to bear its equal proportion in the discharge of liens upon the premises. The mind of the court in that case was not directed to these questions. All the court meant to be understood by the use of the word "absolute" was that upon the death of the wife the law cast the absolute title to one-third of the lands upon the husband, regardless of any act of the wife that would otherwise have the effect to deprive him of such interest, precisely as the law cast the absolute title to real estate upon the children of a person dying intestate, seized of the same. So far as the nature of the title cast by the law of descent is concerned, the language of one section of the statute is precisely the same as the other.

The cases of *Kemph* v. *Belknap, supra,* and *Weaver* v. *Gray, supra,* following it, and the reasoning by which the court sustained the decision of those cases, do, however, lend support to the appellant's contention, and were we entirely satisfied with the soundness of the reasons given by this court

in *Kemph* v. *Belknap, supra,* we would feel impelled to sustain the appellant's contention with reference to these mortgage debts.

In the two cases just cited the question did not arise as it is presented here. It was not there a question in reference to the payment of liens upon the property of which the intestate died seized, and for which her estate was not liable, as it is here, but it was a question between the surviving husband and the administrator of the deceased wife's estate.

In *Kemph* v. *Belknap, supra,* the question involved was whether the husband's interest in lands acquired by descent from his wife could be subject to the payment of the expenses of her last sickness, funeral expenses and taxes, which were debts against her estate, and it was there held that the husband's interest could not be subjected by the administrator to the payment of these claims. The process of reasoning by which the court arrived at the conclusion that the husband's interest in the lands inherited from his deceased wife could not be so subjected to the payment of debts against her estate seems to be that the provisions of the statute in favor of the surviving husband and wife in the property left by the decease of either spouse is intended by the law to make a more ample provision for the support and maintenance of the family, and is not to be governed by the same rule that applies to the descent of property to children and other heirs, and the legislature, by expressly providing, in §3016, *supra,* that the interest which the husband takes in the wife's land "shall be subject to its proportion of the debts of the wife contracted before marriage," forbids the idea that such interest should be subject to any other debts than those therein expressly enumerated, the court affirming the familiar maxim of the law, that the express mention of one thing in a contract, will or statute implies the exclusion of others; that, with this express exception, the rights conferred by the statute of descents upon the husband in the

wife's land should be governed by the same rule as applied to the rights of the wife in the husband's land, and that in all other respects they stand upon the same footing.

We think these reasons are unsound. The maxim of the law, that the express mention of one thing excludes all others, applies only when there are others that 7. could have been excluded. That rule has no application in the construction of this section of the statute, for the reason that at the time the statute of descents was enacted a married woman was incapable of contracting debts, and therefore the legislature could not have had it in mind to exclude that which could have had no existence. All of the enabling acts by virtue of which a married woman can contract debts, and by virtue of which other debts than those contracted before marriage could arise against her, or her estate, have been passed since the enactment of the law of descents, and instead of manifesting an intention on the part of the legislature to exonerate the husband's interest in the land from the payment of its share of the wife's debts, they, in unmistakable terms, manifest an intention to charge it with all the wife's debts that under the law, as it then stood, she could, in life, have contracted; and the use of this expression emphasizing the intention ought not to be construed as implying an intention to exonerate the husband's interest from the payment of its share of the debts, which, by virtue of subsequent laws, the wife might contract after the marriage relation was entered into. Nor, in our judgment, do the same reasons for the enactment and construction of beneficial provisions of the law in 6. favor of the widow out of the husband's estate, apply to like provisions for the widower out of the wife's estate. The reasons for the enactment of such provision by the legislature, and their liberal construction by courts in favor of the widow, have no application whatever to the widower. The marital duties and obligations resting on the husband are entirely different from those resting upon the

wife. It is the duty of the husband to provide for the members of his family, to furnish them shelter, food and clothing, and to pay all the living expenses of the family. He is supposed to be the breadwinner of the household. The wife's duties are entirely different. It is not presumed that she will earn a living for the family, or that she will contribute to the payment of the household expenses, and when the husband dies, and the duties with reference to the support and maintenance of the family that rested upon him are thus thrust upon the shoulders of the wife, it is altogether just, wise and proper that the law should make liberal provisions from the husband's estate for her benefit, to enable her, so far as possible, to meet these new and unfamiliar burdens; and this is the reason for the enactment of the liberal and beneficent provisions of our laws for the surviving wife. This is the reason she is allowed by this same law to select $500 in value of the personal effects of the decedent, free from administration, to occupy the homestead for one year, with forty acres of land adjacent, free from rent, and to take one-third of the lands of which her husband died seized, free from all demands of creditors. These reasons do not apply to the surviving husband, and the beneficial provisions were not enacted in his favor. On the contrary, the statute simply provided that upon the death of the wife, testate or intestate, he should take one-third of the land of which she died seized, and expressly declared that he should take this interest subject to all the debts which, under the state of the law then existing, she could have contracted.

The only difference between the interest given to the husband and that given to the children, is that the husband took his interest whether the wife died testate or intestate, whereas the child took the interest only in case the parent died intestate.

Construing together all of the provisions of the statute on the subject of the rights of the surviving husband and wife

in the property of the other, in the light of the law as it existed at the time of the enactment of the same, we think it plainly manifest that it was not the purpose of the legislature to relieve the husband's interest in the land belonging to the deceased wife from the payment of any part of her debts, either contracted before or after marriage. And while the doctrine of *stare decisis* requires that we adhere to the rule announced in the case of *Kemph* v. *Belknap, supra,* because it has become a rule of property, and changing the rule now might produce confusion in titles, as the ruling would necessarily relate back to the time the law came into force, therefore we feel that public policy requires that, even though we are not satisfied with the construction given the statute in that case, the decision there rendered should remain undisturbed. *Rockhill* v. *Nelson* (1865), 24 Ind. 422; *Hines* v. *Driver* (1883), 89 Ind. 339; *Harrow* v. *Myers* (1868), 29 Ind. 469; *Board, etc.,* v. *Allman* (1895), 142 Ind. 573, 39 L. R. A. 58. We do not, however, feel bound to follow these cases beyond the limit of the facts upon which they were predicated. *Louden* v. *James* (1869), 31 Ind. 69.

The question arising here, over the payment of these mortgage liens that were upon the premises when the title thereto was acquired by the deceased, not involving a question of the right of the administrator to subject the husband's interest to the payment of the wife's debts contracted after marriage, and the question as to the liability of such interest to pay its proportionate share of the tax and mechanics' liens, arising, as they do here, between the heirs, we do not feel precluded from following our present convictions upon the rule of law that should govern the rights of the parties, and declaring that, as between the children and the husband, the husband's interests are liable to its proportionate share of all the specific liens upon the lands inherited from the wife and mother.

The judgment of the court below is affirmed.

## ON PETITION FOR REHEARING.

RABB, J.—Appellant's petition for a rehearing calls the court's attention to the fact that section twenty-two of the statute of descents (1 R. S. 1852, p. 248, §2485 R. S. 12. 1881), under which appellant claims that the interest which the surviving husband takes in the deceased wife's real estate shall not be subjected to her debts made subsequent to her marriage, or to debts which are liens upon her real estate, was reënacted and amended in 1891 (Acts 1891, p. 71, §3016 Burns 1908). Such an amendment was made, and the statute was reënacted in precisely the same language as it originally stood, with a proviso added, that if the wife shall have left a will, such widower may elect to take under the will. It is evident that the sole purpose of the amendment was to vest in the husband the right to elect to take under the provisions of the will made by his deceased wife, rather than under the law. It was not designed in anywise to relieve the interest he would take under the law from the payment of any debts that it was then subject to, and we think that, for the reasons set forth in the original opinion, it was never the legislative purpose to relieve the interest which a surviving husband took in his wife's lands from the payment of any just charges against her.

Petition for rehearing overruled.