**Walter I. McADAMS and Margie L. McAdams, Appellants (Plaintiffs),**

v.

**DOROTHY EDWARDS REALTORS, INC. and First Federal Savings & Loan Association of Kokomo, Appellees (Defendants).**

No. 34A04–9003–CV–00147.

Court of Appeals of Indiana, Second District.

May 18, 1992.

Joseph H. Davis, Lawrence R. Murrell, Davis & Murrell Law Firm, Kokomo, for appellants.

J. Conrad Maugans, Bayliff Harrigan Cord & Maugans, Kokomo, for appellees.

## CASE SUMMARY

BUCHANAN, Judge.

Appellants-plaintiffs Walter I. McAdams and Margie L. McAdams (collectively referred to as the McAdamses) appeal the judgment entered by the trial court in favor of defendant-appellee Dorothy Edwards Realtors, Inc. (Edwards Realtors) upon remand from this court.

We reverse and remand.

## FACTS

This is an appeal from the trial court's judgment after remand from our decision in *Dorothy Edwards Realtors, Inc. v. McAdams* (1988), Ind.App., 525 N.E.2d 1248. The facts that gave rise to that appeal, which included, as a defendant-appellee, First Federal Savings & Loan Association of Kokomo (First Federal), were summarized in that opinion as follows:

"On September 29, 1975, Donald L. Parnell and Loretta M. Parnell [hereinafter referred to as the Parnells] borrowed $31,000 from First Federal, a sum secured by a note and recorded mortgage on their residential real estate [hereinafter referred to as the property]. According to the mortgage, if the property was sold by the Parnells without First Federal's written consent, First Federal had the option to declare the Note immediately due and payable.

On November 28, 1980, the Parnells entered into an exclusive agreement with Edwards Realtors to sell the property. Gary Taylor (Taylor) was the principal owner of Edwards Realtors and the Parnells' real estate agent.

The Parnells and the McAdamses, through Taylor, entered into a purchase agreement on June 12, 1981, which provided for the sale of the property to the McAdamses by land sale contract, with the purchase price being $72,500. The down payment was set at $40,000, with the balance of $32,500 to be paid in minimum monthly installments of $500. The purchase agreement provided that '[t]itle shall be subject to easements, and restrictions of record, if any, and free and clear of all other liens and encumbrances except as herein stated.' *Record* at 34. The mortgage lien held by First Federal was not mentioned.

On or before June 23, 1981, Taylor gave to Robert Heltzel, First Federal's vice-president, a copy of the purchase agreement and a proposed land sale contract. First Federal orally agreed to the sale, and then chose not to declare the unpaid balance due and payable.

After Taylor delivered an abstract of title to the property to the McAdamses' attorney, Joseph Davis (Davis), Davis returned to Taylor a title opinion on June 23, 1981. Davis found merchantable title in the Parnells and specifically referred in the title opinion to two mortgage liens on the property, one of which was the lien held by First Federal. Davis concluded in his opinion that the lien held by First Federal should be satisfied and released at closing. The McAdamses did not receive a copy of the opinion.

At the closing on June 24, 1981, a land sale contract prepared by Taylor was signed by the parties. The McAdamses made a $40,079.68 down payment to Taylor, which Taylor placed in the Edwards Realtors' trust account. This contract provided that '[t]he Seller may, at his election, place or maintain a mortgage on said premises for an amount not in excess of the then unpaid balance of the sale price; and the Buyer agrees that any such mortgage shall be a first lien and prior to any interest of his in said premises....' *Record* at 43. Neither the McAdamses' attorney nor their real estate agent was present at closing. Although Taylor was aware that First Federal's mortgage should be released at closing, he did not so advise the McAdamses before the closing was consummated. The fact that the mortgage would remain on the property after closing was not discussed with Walter at any time. However, Walter was indirectly aware of that because he heard the Parnells remark at closing they would pay $10,000 to First Federal on their obligation. He also knew that the approximate amount of the mortgage was $31,-

000. A copy of the recorded land sale contract was delivered to First Federal on June 25, 1981.

From the down payment received at closing from the McAdamses and placed in the trust account, Taylor paid $6,000 to Household Finance and thereby satisfied Household's lien on the property. None of the money received by Taylor at closing was applied to extinguish or reduce the debt secured by the mortgage held by First Federal.

On June 25, 1981, the Parnells paid First Federal $10,000 on their debt. On June 29, 1981, the Parnells and First Federal entered a modification agreement, which provided for the payment of the remaining indebtedness (approximately $20,000) owed on the Parnells' debt. The interest rate was raised to 16%, with the first of monthly payments of approximately $400 due in July, 1981. The Parnells, however, did not make any payments under this agreement until April, 1983. First Federal made no disclosures to either the Parnells or the McAdamses of any deferrals it was making of the Parnells' required payments, although each month that the Parnells did not pay, First Federal capitalized the interest and added it to the outstanding balance.

The McAdamses, on the other hand, made all of their regular monthly payments of $500 to the Parnells under the land sale contract. *Record* at 323, 433–34. Sometime prior to May 7, 1983, Walter was ready to pay the balance on the land sale contract, but was 'troubled' about the balance of the Parnells' debt. *Record* at 318, 320. Inquiries to the Parnells and First Federal as to the amount of the unpaid balance on the loan were unavailing. *Record* at 320–21, 397. An agent of First Federal did inform Walter that the Parnells were current on the payments. *Record* at 321, 396. It was not until February, 1984, that the McAdamses first learned that the balance on the mortgage exceeded the balance due on the contract and that the Parnells had not been making payments on the debt secured by the mortgage.

*Record* at 321–22, 326. After learning this, the McAdamses made no further payments under the land sale contract. *Record* at 323. The unpaid contract balance at that time was $5,253.97. *Record* at 324.

First Federal declared the Parnells in default in July, 1984. On October 2, 1984, the McAdamses brought suit against the Parnells, Edwards Realtors, and First Federal. The McAdamses asked that the Parnells be ordered to convey the property to them free of all liens and encumbrances. Against Edwards Realtors, the McAdamses alleged that Taylor failed to pay First Federal the money received from the McAdamses at closing to satisfy the lien, and asked for a judgment against Edwards Realtors to pay the remaining debt on the mortgage lien, and for attorney fees. Against First Federal, the McAdamses charged violations of federal and state consumer credit laws. They asked for attorney fees and requested the trial court to quiet title in the McAdamses' name free of the mortgage upon payment to First Federal of the remaining amount due the Parnells under the land sale contract. First Federal then asked for a judgment against the Parnells for the amount due under the mortgage and for mortgage foreclosure against the McAdamses. The McAdamses tendered to the clerk of the court the unpaid principal sum on the land contract plus interest, in the sum of $6,248.69. The McAdamses also gave to First Federal notice of cancellation and rescission of loans made by First Federal to the Parnells.

The Parnells subsequently moved away from Indiana, and the trial court found it had no jurisdiction over their property except for the payment by the McAdamses into court of the final installment under the land sale contract.

The unpaid balance of the mortgage as of the first date of the two-day trial was $32,964.03, with daily interest accruing at $14.65 per day. After the trial, the trial court entered judgment for First

Federal against the Parnells for the sum which the McAdamses deposited into court, and also ordered that the payment of that sum to First Federal would satisfy and release the lien which First Federal held on the McAdamses' property, which in effect denied foreclosure. The trial court also entered judgment for the McAdamses against Edwards Realtors and First Federal in the amount of $7,500 for attorney fees, plus costs of the action. Specific findings of fact and conclusions of law were made by the trial court at the request of the McAdamses. Both First Federal and Edwards Realtors appeal from the trial court's denial of their motions to correct errors."

*McAdams, supra,* at 1249–51.

In the first appeal, Edwards Realtors challenged the propriety of the trial court's order that it pay the McAdamses' attorney's fees. First Federal also challenged the trial court's award of attorney's fees and claimed that the trial court erred when it concluded First Federal's mortgage was subordinate to the McAdamses' interest in the property.

On appeal, the McAdamses did not respond to Edwards Realtors' claims, and we reversed the trial court's judgment for attorney's fees against Edwards Realtors upon a showing of prima facie error. In so doing, we followed the general rule that each party bears its own attorney's fees and concluded that the award of attorney's fees was inappropriate.

With respect to First Federal's claims, we reversed the award of attorney's fees, determining that the trial court had misapplied various federal and state consumer protection laws. We also decided that the trial court had erred when it refused First Federal's right to foreclose on its mortgage and we reversed and remanded the judgment to the trial court with instructions to direct an order of foreclosure.

Following the issuance of our opinion in the first appeal, the McAdamses entered into a written agreement with First Federal, dated November 15, 1988, which provided that, in exchange for the McAdamses' payment of $46,565.32 and agreeing not to seek transfer of our decision to the Indiana Supreme Court, First Federal promised not to execute upon a judgment of foreclosure entered by the trial court. On November 21, 1988, the McAdamses filed with the trial court their Motion for Entry of Judgments on Remand:

"Plaintiffs, Walter I. McAdams and Margie L. McAdams, move the Court to enter judgments on the remand of this case as follows:

1. Judgment for [First Federal] and against Donald L. Parnell and Loretta M. Parnell and Walter I. McAdams and Margie L. McAdams that the lien of the mortgage of First Federal dated September 29, 1975 ... in the sum of $46,565.32, together with interest thereon as allowed by law from November 16, 1988, be foreclosed, paid and satisfied through public sale by the Sheriff of Howard County....

2. Judgment for Walter I. McAdams and Margie L. McAdams and against Dorothy Edwards Realtors, Inc. in the sum of $40,316.63 ($46,565.32 mortgage lien less $6,248.69 held by the Clerk), together with interest thereon as allowed by law from November 16, 1988, and costs of this action.

In support of this Motion, Plaintiffs show:

1. By decision in Cause No. 34A02–8609–CV–00320 entered July 11, 1988, rehearing denied October 26, 1988, the Court of Appeals of Indiana reversed and remanded the judgment of this Court entered in this cause on April 14, 1986, with instructions to direct an order of foreclosure in favor of First Federal.

2. Entry of judgment for McAdams and against Dorothy Edwards Realtors, Inc. in the amount required to satisfy First Federal's mortgage lien is consistent with the Findings of Fact Nos. 1 through 27 and Conclusions Nos. 1 through 8 made by this Court on April 14, 1986, and consistent with the opinion of the Court of Appeals wherein that Court stated:

'... The trial court specifically referred in its findings and conclusions

to Taylor's role and duties as a trustee, and found that due to Taylor's misapplication of trust funds, Edwards Realtors should account to the McAdames [sic] ... We may not overturn the determinations of the trial court unless they are clearly erroneous, i.e., only if the evidence contains no facts or reasonable inferences to support those findings ... Edwards Realtors has not disputed the trial court's findings that the action was based on a breach of trust, on account, or to recover personal property, and has thus failed to convince us that the findings are clearly erroneous ...' See [525 N.E.2d 1248, at 1252 ..."

*Record* at 84–5.

Edwards Realtors objected to the McAdamses' interpretation of the language of our decision and objected to the McAdamses' request that judgment be rendered against the realty company for the remaining amount of the mortgage. Instead, Edwards Realtors suggested that the trial court's order implementing our decision should show judgment for it and against the McAdamses. On December 4, 1989, the trial court entered an order that mirrored Edwards Realtors' request:

"The Judgment in favor of the Plaintiffs against the Defendant, Dorothy Edwards Realtors, Inc., having been reversed by the Court of Appeals, said Judgment is now vacated and the Clerk is directed to release the Judgment as shown in the Judgment Docket.

Judgment is now entered against the Plaintiffs and for the Defendant, Dorothy Edwards Realtors, Inc."

*Record* at 131.

## ISSUES

The McAdamses and Edwards Realtors raise several issues which we consolidate and restate as four:

1. Did the trial court err by not entering judgment of foreclosure on First Federal's mortgage lien?
2. Whether the McAdamses waived their right to challenge the trial court's failure to award them a judgment suffi-

cient to satisfy the mortgage, when the McAdamses failed to address the issue of the lack of judgment on the first appeal?
3. Whether Edwards Realtors may, on a second appeal, challenge as supported by insufficient evidence the trial court's determination that its agent had a duty to apply the trust money to satisfy the First Federal mortgage and that it misapplied the funds by paying trust money to the Parnells rather than satisfying the First Federal mortgage?
4. Whether the trial court's original determination that Edwards Realtors' agent misapplied trust money and the realty company should account for that misapplication, was supported by sufficient evidence?

## DECISION

**ISSUE ONE**—Did the trial court err by not entering judgment of foreclosure on First Federal's mortgage lien?

**PARTIES' CONTENTIONS**—The McAdamses claim that the trial court erred by not entering judgment of foreclosure as directed by our opinion. Edwards Realtors says the issue does not affect the company, and points out that, due to the agreement between the McAdamses and First Federal not to "execute" on a foreclosure order entered by the court, the McAdamses were not prejudiced by the failure to enter the default judgment.

**CONCLUSION**—The trial court's failure to foreclose on First Federal's mortgage lien was not reversible error.

 In order to constitute reversible error, the complaining party must show both an erroneous ruling and prejudice resulting therefrom. *P.S. by Harbin v. W.S.* (1983), Ind., 452 N.E.2d 969; *In re Marriage of Sloss* (1988), Ind.App., 526 N.E.2d 1036. Although the McAdamses complain the trial court erred by not entering an order foreclosing on the First Federal mortgage as ordered by our first decision, they have not argued or demonstrated how they were prejudiced by the failure to issue the foreclosure order. *Appellant's Brief* at 23–4. Indeed the record shows that

following the decision the McAdamses entered into an agreement in which they agreed not to seek transfer of the case to the Supreme Court in exchange for First Federal assigning the mortgage to the McAdamses and agreeing not to "execute" on any foreclosure order entered by the trial court. *Record* at 125. First Federal, the presumed beneficiary of the foreclosure order, has not raised the issue in this appeal. The McAdamses have failed to argue or demonstrate prejudice as to the trial court's failure to order the First Federal mortgage foreclosed. *P.S., supra; Sloss, supra.*

ISSUE TWO—Whether the McAdamses waived their right to challenge the trial court's failure to award them a judgment sufficient to satisfy the mortgage, when the McAdamses failed to address the issue on the first appeal?

PARTIES' CONTENTIONS—Edwards Realtors claims the McAdamses waived the claim it now raises by failing to raise the lack of judgment against Edwards Realtors in the first appeal. The McAdamses respond that the trial court's failure to issue judgment against Edwards Realtors was not in error until this court reversed judgment against First Federal and remanded the matter for the trial court to enter an order foreclosing the property.

CONCLUSION—The McAdamses did not waive their claim for judgment in this case.

■ Following a bench trial, the court entered conclusions determining Taylor had acted improperly and that Edwards Realtors should account for the misapplication of trust funds:

"3. Gary Taylor, as Parnells' agent and the real estate broker closing the transaction, had the duty to disburse monies from his trust account so as to accomplish performance of obligations of Parnells under the Purchase Agreement. In order to perform Parnells' obligation to furnish an abstract of title showing merchantable title free and clear of First Federal and Household Finance Corporation mortgage liens, it was Gary Taylor's duty to satisfy and obtain the release of those mortgage liens upon payment at closing.

4. Gary Taylor was a trustee with respect to the $40,079.68 which he received from McAdams and deposited to the Dorothy Edwards Realtors, Inc. Trust Account. As trustee, Gary Taylor had the duty to apply monies in said Trust Account first to correct defects in title to the real estate by paying liens and encumbrances required to be paid in order that the abstract of title might show merchantable title free and clear of liens and encumbrances.

5. The $40,079.68 paid by McAdams to Dorothy Edwards Realtors, Inc. and deposited in the Dorothy Edwards Realtors, Inc. Trust Account was to be held and disbursed by Dorothy Edwards Realtors, Inc. as trustee for the benefit of the Parnells and the McAdams as beneficiaries. Dorothy Edwards Realtors, Inc. had the duty to treat beneficiaries impartially in disbursing monies from its Trust Account. Dorothy Edwards Realtors, Inc. favored Parnells to the detriment of McAdams by paying Parnells and Parnells' unsecured obligations to Dorothy Edwards Realtors, Inc. and Scoggins and Associates in preference to First Federal's mortgage lien which was required to be satisfied by the terms of the Purchase Agreement and by McAdams' attorney title opinion.

6. In paying monies from the Dorothy Edwards Realtors, Inc. Trust Account, to Dorothy Edwards Realtors, Inc. and Scoggins and Associates, Dorothy Edwards Realtors, Inc. dealt with trust monies for its own account without fairly advising McAdams of the risk of loss of property which could result from title to the real estate being subject to First Federal's mortgage lien.

7. *As the result of the misapplication of funds paid from Dorothy Edwards Realtors, Inc. Trust Account to Parnells, Dorothy Edwards Realtors, Inc. and Scoggins and Associates, Dorothy Edwards Realtors, Inc. should account to McAdams.*"

*Record* at 260–67 (emphasis supplied).

Having reached this conclusion, the trial court failed to enter judgment regarding

how much, if anything, Edwards Realtors owes the McAdamses as as result of the misapplication of trust funds. Now, with the McAdamses' judgment against First Federal overturned on appeal and the path cleared for foreclosure, the McAdamses claim that, as a result of the trial court's original determination that Taylor had acted improperly, they should be awarded judgment against Edwards Realtors in a sum sufficient to satisfy the First Federal mortgage.

Edwards Realtors is correct that the McAdamses made this claim for relief in their original complaint.[1] However, that the the McAdamses did not raise, by assigning cross-errors, that lack of judgment on appeal as error, does not bar the McAdamses from reasserting the claim upon remand. As this court observed in *White v. Davis* (1981), Ind.App., 428 N.E.2d 803:

> *"In cases where multiple claims are made, a judgment, decision or order on fewer than all the claims does not result in a final judgment and cannot be appealed* unless the trial court expressly determines that there is no reason for delaying an appeal and expressly directs the entry of judgment. *Matter of Estate of Newman,* (1977) [174] Ind.App. [537], 369 N.E.2d 427: Ind. Rules of Procedure, Trial Rule 54(B). Generally it is accepted that 'the requirement of finality of judgment as a basis for appellate proceedings is the same as that of finality as a basis for the application of the rules of res judicata.' Restatement of Judgments § 41(a)."

*Id.* at 805 (emphasis supplied).

In this case, the McAdamses launched multiple claims against the Parnells, First Federal, and Edwards Realtors. *Record* at 10–21. The trial court's original judgment for the McAdamses, which judgment deemed the First Federal mortgage satisfied by the $6,248.69 the McAdamses had paid into the court, obviated the need for the trial court to also award the McAdamses judgment against Edwards Realtors in an amount sufficient to pay off the mortgage.

A final judgment is one which determines the rights of the parties and reserves no further question for future determination. *Home Electric Light & Power Co. v. Globe Tissue Paper Co.* (1896), 145 Ind. 174, 44 N.E. 191; *White, supra.* In this case the trial court's judgment is silent as to what, if anything, Edwards Realtors owes as a result of the court's determination that the realty company should account for the misapplication of trust money. *Record* at 82. Although Edwards Realtors interprets the trial court's silence as a final (and appealable) judgment denying the McAdamses the relief they requested, such a conclusion is not evident from the trial court's conclusion that Edwards Realtors should account for the misapplication of trust funds. *Record* at 80.

Given the trial court's silence, we must conclude there is not yet a final judgment on whether the McAdamses are entitled to the relief they requested in the complaint, which claim for relief they reasserted on remand. As there is no final judgment on this issue, the McAdamses could not have waived it for failing to challenge a "negative judgment", *appellee's brief* at 12, in the first appeal. *White, supra.* Thus, without a final judgment before us, we must remand this case to the trial court for further proceedings to determine what relief the McAdamses are entitled to as a result of the requirement that Edwards

---

1. In their complaint, the McAdamses requested three types of relief from Edwards Realtors:

 "(1) the sum equal to the amount required to pay, satisfy, and obtain the release of said first morgage lien of First Federal Savings & Loan Association on June 24, 1981, together with such additional sums as may be required to be paid to First Federal in order for Plaintiffs to obtain title to said real estate free and clear of said morgage lien of First Federal, taking into consideration said unpaid sum due the Defendants Parnell from Plaintiffs; (2) damages and expenses incurred, including attorney's fees, as the result of the payment of monies by Dorothy Edwards Realtors, Inc. to Defendants Parnells which Plaintiffs had entrusted to Defendant Dorothy Edwards Realtors, Inc. for payment of liens and encumbrances upon said real estate at time of closing; and (3) costs of this action and for all other just and proper relief in the premises."

 *Record* at 17, 29 (emphasis supplied).

Realtors should account to the McAdamses for misapplying trust funds. *See Home Electric, supra; White, supra.*

■ ISSUE THREE—Whether Edwards Realtors may, on a second appeal, challenge as supported by insufficient evidence the trial court's determination that its agent had a duty to apply the trust money to satisfy the First Federal mortgage and that it misapplied the funds by paying trust money to the Parnells rather than satisfying the First Federal mortgage?

PARTIES' CONTENTIONS—The McAdamses claim that this court on appeal expressly determined that these findings and conclusions were not clearly erroneous because Edwards Realtors failed to dispute them in the first appeal, and thus they now constitute the "law of the case" which cannot be challenged in this second appeal. Edwards Realtors responds that the Court of Appeals was referring to the resolution of other issues when this court declared the findings and conclusions were not clearly erroneous.

CONCLUSION—Edwards Realtors is not foreclosed from challenging the finding as supported by insufficient evidence.

"What's sauce for a goose is sauce for a gander." Jonathon Swift, *Polite Conversation* (1738). Just as we concluded in Issue Two that the McAdamses had not waived their right to a determination of the damages due them by not raising that question in the first appeal, we apply the same reasoning in favor of Edwards Realtors, i.e. they may raise the issue of insufficient evidence to support the trial court's conclusion of misapplication of trust money. The concept of the law of the case is not relevant here.

■ The law of the case doctrine provides that when an appellate court decides an issue, that decision is binding on both the trial court on remand and on the appellate court on a subsequent appeal given the same case and substantially the same facts. *Fair Share Organization, Inc. v. Mitnick* (1964), 245 Ind. 324, 198 N.E.2d 765, *cert. denied,* 379 U.S. 843, 85 S.Ct. 82, 13 L.Ed.2d 48; *Hewell v. State* (1987), Ind.

App., 507 N.E.2d 241. The McAdamses base their law of the case claim on language this court used in the first appeal:

"The McAdamses complaint alleged that Taylor failed in his duty to make required payments from the trust funds. The trial court specifically referred in its findings and conclusions to Taylor's role and duties as a trustee, and found that due to Taylor's misapplication of trust funds, Edwards Realtors should account to the McAdamses. *Record* at 265. We may not overturn the determinations of the trial court unless they are clearly erroneous, i.e., only if the evidence contains facts or reasonable inferences to support those findings. *Wiseman v. Wolfe's Terre Haute Auto Auction, Inc.* (1984), Ind.App., 459 N.E.2d 736; Indiana Rules of Procedure, Trial Rule 52(A). *Edwards Realtors has not disputed the trial court's findings that the action was based on a breach of trust, on account, or to recover personal property, and has thus failed to convince us that the findings are clearly erroneous.* Whether the action is framed in terms of suit on account, or for breach of a constructive trust, the applicable statute of limitations is six years. *See* Ind.Code 34-1-2-1 (1982). This action was brought within four years."

*McAdams,* 525 N.E.2d at 1252 (emphasis supplied).

This language was included in our discussion of the issue "Was the McAdamses' action barred by the statute of limitations?" *Dorothy Edwards Realtors, supra,* at 1252. In the first appeal we observed that because Edwards Realtors did not dispute the finding that its agent has misapplied trust money and should account for the misapplication, that finding would control for the purpose of determining under what theory McAdamses action should be framed, i.e. suit on account or breach of constructive trust, and what statute of limitations should apply. As this court has yet to determine whether the finding of a misapplication of trust funds was supported by the evidence, Edwards Realtors is not barred by the doctrine of the law of the

case from raising the issue on this second appeal. ·

■ ISSUE FOUR—Whether the trial court's original determination that Edwards Realtors' agent misapplied trust and the realty company should account for that misapplication, was supported by sufficient evidence?

PARTIES' CONTENTIONS—The McAdamses claim the court's conclusion was supported by language in the Exclusive Right to Sell, the Purchase Agreement, and the title opinion which, the McAdamses argue, placed a duty on Edwards Realtors to use the trust money to satisfy the First Federal mortgage. Edwards Realtors responds that the Purchase Agreement incorporates by reference the real estate contract signed by the McAdamses at closing, which expressly permitted the Parnells to retain a mortgage on the property.

CONCLUSION—The finding was not clearly erroneous.

The trial court originally concluded in this case that the Parnells did have a duty to convey title to the property free of the First Federal mortgage lien:

"1. Paragraph C of the Exclusive Right To Sell and paragraph 3 of the Purchase Agreement set forth Parnells' duty to furnish to McAdams prior to closing an abstract showing merchantable title to said real estate in the name of Parnells subject only to easements and restrictions of record, and free and clear of mortgage liens, including the First Federal and Household Finance Corporation mortgage liens."

*Record* at 265.

The court also recognized that the Parnells' duty was transferable to Edwards Realtors:

"3. Gary Taylor, as Parnells' agent and the real estate broker closing the transaction, had the duty to disburse monies from his trust account so as to accomplish performance of obligations of Parnells under the Purchase Agreement. In order to perform Parnells' obligation to furnish an abstract of title showing merchantable title free and clear of First

Federal and Household Finance Corporation mortgage liens, it was Gary Taylor's duty to satisfy and obtain the release of record of those mortgage liens upon payment at closing."

*Record* at 265.

Edwards Realtors argues the court's legal conclusions are in error because the Purchase Agreement incorporates by reference the real estate contract signed at closing, which contract, Edwards Realtors claims permits the Parnells to retain a mortgage. on the property:

"13. The Seller may, at his election, *place or maintain a mortgage on said premises* for an amount not in excess of the then unpaid balance of the sale price and the Buyer agrees that any such mortgage shall be a first lien and prior to any interest of his in said premises; ..."

*Record* at 316, *exhibit* at 3.

However, Paragraph 13 also provided the Buyer with substantial protection should the Seller later opt to place a mortgage on the property:

"[P]rovided that in the event the Seller shall *hereafter* elect to place such a mortgage on said premises he shall *before* the execution thereof, give the Buyer written notice ... which notice shall contain the name of the mortgagee, the principal amount, the rate of interest and the date of maturity of the proposed mortgage. If such notice shall state that the mortgagee requires further assurance of the priority of such proposed mortgage, then the Buyer agrees within ten (10) days after receipt of such notice to execute such further assurance of priority as may be required by such mortgagee, provided, however, that the Buyer shall not be required to bind himself personally to pay the mortgage debt.... [T]he Buyer may, at his election, reduce the unpaid balance of the sale price hereunder to an amount equal to the unpaid balance of such mortgage debt and demand the warranty deed ... [and] the Seller shall immediately deliver to the Buyer such deed which ... shall [require] the grantee [to] assume and agree to pay indebtedness secured by said

mortgage provided the mortgagee does not restrict such assumption ..."

*Record* at 316, *exhibit* at 3.

The McAdamses dispute the claim that Paragraph 13 was included by reference in the Purchase Agreement. In the alternative, they interpret Paragraph 13 to apply only to a mortgage that is placed on the property after the execution of the contract:

"Surely the attorney who prepared the form for real estate brokers to use contemplated the plight of the land contract purchaser who performs his contract and finds that he still has to pay the Seller's mortgage to save his property. The order in which the scrivener has placed the operative words is significant. In order that the land contract embody the terms of the Purchase Agreement requiring Parnells' title to be free and clear of liens and encumbrances, it is necessary to construe the land contract to that effect if it is possible to do so. In such construction it is significant that the provision does not say 'maintain or place.' By placing the word 'place' before the word 'maintain,' the scrivener must have contemplated that title to the real estate be clear of liens at the time of execution of the land contract. If that were the case, and the Buyer recorded his contract as [the] McAdamses did in this case, the Seller would then be free to 'place or maintain' a mortgage on the real estate. The Buyer would then have the protections of priority and the required notices and options which are provided for in the remainder of Paragraph 13."

*Appellant's Reply Brief* at 32–33.

Assuming Paragraph 13 was indeed incorporated by reference into the Purchase Agreement, we agree with the McAdamses' view that the provision was not intended to apply to a mortgage which was in existence at the time of the execution of the contract. In examining Paragraph 13 we find particularly persuasive the drafter's use of the language "in the event the Seller shall *hereafter* elect to place such a mortgage on said premises he shall *before* the execution thereof...." (emphasis supplied). *Record* at 316–3, *exhibit* at 3. Clearly this language does not contemplate a pre-existing mortgage. The bulk of Paragraph 13, in fact, establishes the procedure the seller is to follow should he decide to place a mortgage on the property some time after the execution of the contract. Those legal protections include the requirement of notice, a guarantee that the contract buyer will not be responsible for paying the seller's mortgage, and the buyer's right to obtain a warranty deed from the seller to protect his interest in the property. To interpret Paragraph 13 to also allow the sale of property with pre-existing mortgages and liens would be to permit the seller to circumvent these legal protections. And so it is here. The McAdamses find themselves in the unfortunate position of being forced to pay the Parnells' mortgage in order to save their investment in the home they had contracted to purchase from the Parnells.

With Paragraph 13 disposed of as a basis for permitting the Parnells to sell the property without first satisfying the First Federal mortgage, our review turns to a determination of whether the court's findings are supported by the record. Toward this end, the McAdamses cite Paragraph 3 of the Exclusive Right to Sell, *record* at 310, *exhibit* at 1, and Paragraph C of the Purchase Agreement, *record* at 407, *exhibit* at 1, which both contain the identical provision that the real estate should be "free and clear of all other liens and encumbrances, except as herein stated." In addition, the McAdamses point to a title opinion from their attorney which was sent to Edwards Realtors which says that the First Federal mortgage lien "should be satisfied and released of record upon payment at closing." *Record* at 313, *exhibit* at 2–3. This evidence is sufficient to support the court's determination that there was a duty to satisfy the outstanding First Federal mortgage at the time of the execution of the real estate contract.

Following our directive on the first remand of this case, the trial court reversed its original judgment against Edwards Realtors and entered judgment in its favor and against the McAdamses. That judgment is to be vacated upon remand and the

trial court is to hold a hearing to determine what Edwards Realtors owes the McAdamses as a result of the trial court's original conclusion that Edwards Realtors should account for its agent's misapplication of trust money.

Judgment reversed and remanded for proceedings consistent with this opinion.

GARRARD, J., concurs.

SULLIVAN, J., concurs in result with opinion.

SULLIVAN, Judge, concurring in result.

To the extent that the majority opinion contemplates that upon remand the trial court will find Edwards Realtors liable to the McAdamses for the $46,565.32 paid to First Federal, together with interest thereon, I concur. I am unable, however, to subscribe to several of the rationales used in reaching that result.

### I.

When the trial court failed to order foreclosure, it was apparently attempting to honor the agreement between the McAdamses and First Federal to the effect that in return for the $46,565.32 payment First Federal would not *execute* upon a foreclosure decree. An agreement to not execute upon a judgment is not the equivalent of an agreement to not seek or obtain a judgment. To the contrary, an agreement to not execute presupposes the existence of a judgment upon which to execute. The posture of the case after our remand contemplated a foreclosure order as a predicate for the McAdamses being able to establish damage for which Edwards Realtors might be held liable.

However, I agree that the technical failure of the trial court to strictly follow this court's earlier remand directive did not harm the McAdamses. Instead of awaiting the foreclosure decree, the parties obviated the need for that step by entering into an agreement which was intended to effect the same result as if a foreclosure decree had been entered. Accordingly, the payment to First Federal triggered the right of the McAdamses to assert their claim against Edwards Realtors.

### II.

I concur and agree that the McAdamses have not waived their claim against Edwards Realtors by failing to assert it as cross-error in the initial appeal. The McAdamses were the successful parties at the trial level in the first instance. Until we reversed the trial court and ordered foreclosure the McAdamses were not aggrieved and had no reason to request a judgment against Edwards Realtors. Had they done so we might well have ruled that such judgment would have afforded double recovery, i.e. full satisfaction of the mortgage obligation plus a windfall from Edwards Realtors.

### III.

I agree that Edwards Realtors may not have considered itself aggrieved by the finding of misapplication of trust moneys because that finding was not accompanied by a judgment. Unless and until the determination that the mortgage had been fully satisfied were set aside, and unless and until the McAdamses were put in a position of having to pay the $46,000 or suffer loss of the real estate upon foreclosure sale, the finding of misapplication, standing alone, did not give rise to an imposition of liability.

The majority, however, rests the holding that Edwards Realtors is not barred by the law of the case upon the fact that "this court has yet to determine whether the finding of a misapplication of trust funds was supported by the evidence...." (At 621.) Yet the majority proceeds to make that precise determination under Issue Four. The Issue Four holding would seem to undercut the holding under Issue Three.

### IV.

I concur in the holding that the evidence was sufficient for the trial court to have concluded that there was an obligation on the part of Edwards Realtors to clear the First Federal Mortgage lien by application of trust fund moneys. My agreement, however, is premised upon the title opinion

which directed that the mortgage lien "should be satisfied and released of record upon payment at closing". Record at 313–1 to 313–2.

I do not concur in the majority's analysis of Paragraph 13 of the real estate contract signed at closing. The majority appears to adopt the McAdamses' interpretation that by using the phrase "place or maintain a mortgage" rather than "maintain or place a mortgage", the parties intended that sellers might only create a new mortgage after closing but could not "maintain" the already existing mortgage. The logic of this position totally escapes me. It completely ignores the clear import of the word "maintain" when used with the disjunctive "or".

The parties, in my estimation, contemplated that the existing mortgage might be "maintained" on the premises so long as it never exceeded the amount due on the contract owing from the McAdamses. It is clear that the mortgage balance grew to exceed that contract balance amount and that, at least in part, the amount due reflected Edwards Realtor's failure to apply trust moneys.

It would be my contemplation that upon remand the trial court might determine what, if any, amount is due the McAdamses by reason of Edwards Realtors' failure to properly apply moneys in its hands.