**Walter I. McADAMS and Margie L. McAdams, Appellants (Plaintiffs Below),**

v.

**DOROTHY EDWARDS REALTORS, INC. and First Federal Savings & Loan Association of Kokomo, Appellees (Defendants Below).**

No. 34S04–9212–CV–983.

Supreme Court of Indiana.

Dec. 17, 1992.

Joseph H. Davis, Lawrence R. Murrell, Kokomo, for appellants.

J. Conrad Maugans, Kokomo, for appellees.

## ON PETITION TO TRANSFER

SHEPARD, Chief Justice.

The question is what duty, if any, does a real estate broker owe a buyer when the broker is the agent of the seller?

### I. History of the Transaction

Donald and Loretta Parnell owned a home in Kokomo. In 1975, they mortgaged it to secure a $31,000 loan from First Federal Savings & Loan. In 1980, the Parnells decided to sell the house. They chose Dorothy Edwards Realtors as their broker, and signed an "Exclusive Right to Sell" agreement stating that the property was to be conveyed "free and clear of all other liens."

In 1981, Walter and Margie McAdams agreed to purchase the Parnells' home for $72,500 in a contract sale. The parties signed a "Purchase Agreement" on June 12, 1981. It called for a $40,000 down payment with the $32,500 balance to be paid within three years, at which time title would transfer to the McAdams. The McAdams were to make payments of at least $500 a month to the Parnells at an interest rate of twelve per cent a year. The Purchase Agreement further stated that title to the property was to be *"free and clear of all other liens* and encumbrances except as herein stated." (Emphasis added.) No liens were mentioned in the Purchase Agreement. There is little doubt that at this point in the negotiations the McAdams believed they were protected, that they were agreeing to buy a home in which no hidden creditors were lurking with a security interest superior to their own equity in the property.

The Purchase Agreement also stated, however, that the McAdams' down payment of $40,000 was to be made "upon delivery of a properly executed Kokomo Board of Realtors approved sales contract." Such a contract was signed by both parties at the closing on June 24, 1981. Unlike the Purchase Agreement, which memorialized the deal as one for title free and clear of all liens, the actual sales contract signed at the closing contained a provision allowing the sellers to "maintain a mortgage" on the property. This right of the sellers to maintain a mortgage had one limitation: the amount which the Parnells owed on the remaining mortgage was not to exceed at any time the balance owed to the Parnells by the McAdams.[1]

---

1. So, for example, if the McAdams reduced their debt owed on the land sale contract from $32,-500 to $20,000, the Parnells' mortgage balance could not exceed $20,000. According to the contract, as the McAdams continued to make payments to the Parnells, the Parnells were supposed to be reducing their mortgage by making payments to First Federal. This they did not

Gary Taylor was the Parnells' broker and the principal owner of Edwards Realtors. After the Purchase Agreement was signed but before closing, Taylor furnished an abstract of title to the McAdams' attorney, Joseph Davis. Davis rendered a written title opinion on June 23, 1981, finding merchantable title in the Parnells but noting the existence of two liens on the property, including the First Federal mortgage. Davis concluded that the liens should be satisfied and released at closing. He provided this opinion not to his clients, but directly to Taylor. Davis did not attend closing the next day, and it was not until the closing that the McAdams saw his written opinion regarding the liens. There was testimony at trial that it is common practice in Howard County for attorneys to provide title opinions directly to real estate agents and not attend closings with their clients.

The McAdams–Parnell closing thus was fairly typical. Taylor presided. Also present were the McAdams, the Parnells, and Roy Bergman, another Edwards Realty agent. Taylor placed the McAdams' down payment of $40,079.68 in the Edwards Realtors trust account, as is customary in such transactions. From the trust account he then paid out the following amounts, totaling $40,079.68, to:

Donald and Loretta Parnell—$29,184.50
Household Finance Company—$6,353.50
Dorothy Edwards Realtors—$2,175
Scoggins and Associates—$2,175
Anderson Abstract Company—$112
Joe Davis—$75
Howard County Recorder—$4.68

The payment to Household Finance satisfied the second lien which Davis had noted in his title opinion. The payments to Edwards Realtors and Scoggins and Associates were for real estate fees (Scoggins was at one point the McAdams' broker), and the payment to Davis was for his legal work. Noticeably absent was any payment to First Federal in satisfaction of its lien on the property. Davis' written opinion that the First Federal lien should be satisfied at closing was disregarded.

The fact that the First Federal mortgage of approximately $30,000 would remain on the property after closing was not formally discussed at the closing. At trial, however, both Mr. and Mrs. McAdams testified that they knew at and after closing that the mortgage was to remain on the property. Indeed, at the closing the Parnells advised the McAdams that they would promptly pay $10,000 to First Federal. The Parnells made such a payment the next day, June 25, 1981, but made no further payments toward their remaining indebtedness of $20,012. Meanwhile, according to Mrs. McAdams' trial testimony, Bergman assured the McAdams that the Parnells' balance would always remain lower than the McAdams' balance, just as paragraph 13 of the land sale contract provided.

The McAdams made monthly payments until February 1984, at which time they discovered the Parnells' payments to First Federal had not kept pace. By this time, the McAdams had paid more than $67,000 of the $72,500 purchase price to the Parnells. Conversely, by the time the case came to trial on October 22, 1985, the unpaid balance of the Parnells' mortgage, with interest accruing at a rate of $14.65 a day, had reached $32,964. The Parnells left the state without paying off the mortgage.

Fearing that they would be liable for the Parnells' mortgage on the property which they now nearly owned, the McAdams initiated this action in the Howard Superior Court, seeking relief from Edwards Realtors for the amount required to clear the First Federal lien and for attorney fees. They also charged First Federal with violating federal and state consumer credit laws. First Federal in turn sought foreclosure against the property.

do. Instead, they moved to Florida and left the McAdams with the First Federal debt, which ran with the property. As Judge Buchanan wrote for the Court of Appeals: "The McAdamses find themselves in the unfortunate position of being forced to pay the Parnells' mortgage in order to save their investment in the home they had contracted to purchase from the Parnells." *McAdams v. Dorothy Edwards Realtors* (1992), Ind. App., 591 N.E.2d 612, 622.

## II. History of the Litigation

In April 1986, the trial court agreed with the McAdams that Taylor should have paid off the First Federal lien from the trust account at closing. The trial court entered conclusions as follows:

3. Gary Taylor, as Parnells' agent and the real estate broker closing the transaction, had the duty to disburse monies from his trust account so as to accomplish performance of obligations of Parnells under the Purchase Agreement. In order to perform Parnells' obligation to furnish an abstract of title showing merchantable title free and clear of First Federal and Household Finance Corporation mortgage liens, *it was Gary Taylor's duty to satisfy and obtain the release of those mortgage liens upon payment at closing.*

4. Gary Taylor was a trustee with respect to the $40,079.68 which he received from McAdams and deposited to the Dorothy Edwards Realtors, Inc. Trust Account. As trustee, Gary Taylor had the duty to apply monies in said Trust Account first to correct defects in title to the real estate by paying liens and encumbrances required to be paid in order that the abstract of title might show merchantable title free and clear of liens and encumbrances.

5. The $40,079.68 paid by McAdams to Dorothy Edwards Realtors, Inc. and deposited in the Dorothy Edwards Realtors, Inc. Trust Account was to be held and disbursed by Dorothy Edwards Realtors, Inc. as trustee for the benefit of the Parnells and the McAdams as beneficiaries. Dorothy Edwards Realtors, Inc. had the duty to treat beneficiaries impartially in disbursing monies from its Trust Account. Dorothy Edwards Realtors, Inc. favored Parnells to the detriment of McAdams by paying Parnells and Parnells' unsecured obligations to Dorothy Edwards Realtors, Inc. and Scoggins and Associates in preference to First Federal's mortgage lien which was required to be satisfied by the terms of the Purchase Agreement and by McAdams' attorney's title opinion.

6. In paying monies from the Dorothy Edwards Realtors, Inc. Trust Account, to Dorothy Edwards Realtors, Inc. and Scoggins and Associates, Dorothy Edwards Realtors, Inc. dealt with trust monies for its own account without fairly advising McAdams of the risk of loss of property which could result from title to the real estate being subject to First Federal's mortgage lien.

7. As the result of the misapplication of funds paid from Dorothy Edwards Realtors, Inc. Trust Account to Parnells, Dorothy Edwards Realtors, Inc. and Scoggins and Associates, Dorothy Edwards Realtors, Inc. should account to McAdams.

Record at 265 (emphasis added).

The trial court ordered that the McAdams' unpaid contract balance ($6,248.69 including interest, held by the clerk during the trial) be paid to First Federal and that payment of that sum would satisfy and release the lien which First Federal held on the property. In effect, this denied foreclosure. The court also entered judgment for the McAdams against Edwards Realtors and First Federal in the amount of $7,500 for attorney fees plus costs.

Edwards Realtors and First Federal appealed. The Court of Appeals: (1) reversed the trial court's judgment for attorney fees against both defendants; (2) determined that the trial court had misapplied various federal and state consumer protection laws; and (3) decided that the trial court erred when it refused First Federal's right to foreclose on its mortgage. *Dorothy Edwards Realtors, Inc. v. McAdams* (1988), Ind.App., 525 N.E.2d 1248 [hereafter *Edwards I*]. The Court of Appeals remanded to the trial court with instructions to enter an order of foreclosure.

On November 15, 1988, approximately four months after the Court of Appeals decision in *Edwards I*, the McAdams and First Federal reached an agreement which allowed the McAdams to stave off foreclosure. With the trial court's determination that "Dorothy Edwards Realtors, Inc. should account to McAdams" apparently left undisturbed by the opinion in *Edwards*

*I*, the McAdams settled their debt with First Federal and turned to Edwards Realtors for reimbursement.

Specifically, the McAdams entered into a written agreement with First Federal which provided that, in exchange for the McAdams payment of $46,565.32 and agreeing not to seek transfer of the *Edwards I* decision to this Court, First Federal promised not to execute on a judgment of foreclosure entered by the trial court pursuant to the Court of Appeals remand order. Six days after signing this agreement, the McAdams filed a motion in the trial court seeking judgment against Edwards Realtors in the sum of $40,316.63 ($46,565.32 mortgage lien less the $6,248.69 held by the clerk).

On December 4, 1989, the trial court denied the McAdams' motion and instead entered judgment against the McAdams and for Edwards Realtors. The Court of Appeals reversed again, *McAdams v. Dorothy Edwards Realtors* (1992), Ind.App., 591 N.E.2d 612, 622–23, [hereafter *Edwards II*], vacating the judgment against the McAdams and remanding for a hearing "to determine what Edwards Realtors owes the McAdamses as a result of the trial court's original conclusion that Edwards Realtors should account for its agent's misapplication of trust money." We grant Edwards Realtors' petition to transfer.

### III. Duty of a Broker

As we stated at the outset, this case turns on the question of the duty owed to a buyer by the seller's broker. In its holding in *Edwards II*, 591 N.E.2d at 621, the Court of Appeals concluded that there was sufficient evidence to support the trial court's *original* determination that Taylor had a duty to satisfy the outstanding First Federal mortgage at the time of the execution of the real estate contract.[2] In setting aside the judgment for Edwards Realtors against the McAdams, the court pointed to the "free and clear title" language in both the Purchase Agreement and Exclusive

Right to Sell agreement, as well as Davis' title opinion that the First Federal lien mortgage lien "should be satisfied and released of record upon payment at closing." *Id.* at 622. This conclusion is contrary to law and thus merits reversal. *Lawyers Title Ins. Corp. v. Pokraka* (1992), Ind., 595 N.E.2d 244.

The question of what duty a real estate broker owes a buyer when the broker is working on behalf of the seller has not heretofore come before this Court. As in any tort case, the determination of duty is a question of law. *Wilson v. Haimbaugh* (1985), Ind.App., 482 N.E.2d 486. The answer here is found in the law of agency.

The American Law Institute recognizes brokers as a species of agent. *See* Restatement (Second) of Agency § 1 com. e, at 11 (1958). *See also* 12 Am.Jur.2d *Brokers* § 3 ("every broker is in a sense an agent"). Unless otherwise agreed, an agent is subject to a duty to his *principal* to act solely for the benefit of his *principal*. *Potts v. Review Bd. of Indiana Employment Sec. Div.* (1985), Ind.App., 475 N.E.2d 708. We are unaware of any authority for the proposition that a seller's agent owes a buyer a duty to act in the buyer's best interest.

In *Wilson*, a case involving similar facts, the Court of Appeals held for the broker on the question of duty. 482 N.E.2d at 487. Like the instant case, *Wilson* involved the sale of property by a seller who moved to Florida and disappointed buyers who were left liable for liens which remained on the property.

Gary Wilson owned certain real property in Indianapolis. When he left Indiana to relocate in Florida, Gary asked Pat Wilson to contact John Haimbaugh and to act in Gary's behalf to sell the property. Both Pat and Haimbaugh were aware of two liens which the bank held against the property, but neither was aware of a lien held by Gary's ex-wife pursuant to a divorce decree. Haimbaugh eventually purchased the property. *Id.* at 486–87.

---

2. The Court of Appeals correctly concluded that the trial court's original findings did not constitute a final judgment and that the propriety of entering a judgment was therefore an appealable issue. We affirm their findings. Ind. Appellate Rule 11(B)(3).

Prior to closing, Pat presented Haimbaugh with a title commitment which had been prepared for a previous prospective purchaser. *Id.* at 487. That title commitment did not reflect the ex-wife's lien, and Pat, unaware of that lien, stated that since the commitment had been prepared, no other transactions had occurred. *Id.* Haimbaugh purchased the real estate prior to procuring title insurance. He subsequently found that the bank mortgages were in default, so he paid them off. Haimbaugh then was forced to defend an action brought by the ex-wife. He brought a claim of negligence against Pat, contending that as the seller's agent Pat had a duty to furnish title insurance or a certified continuation of abstract. *Id.* Haimbaugh argued that he was damaged as a result of Pat's failure to perform an obligation to her principal, Gary, the seller. *Id.*

The Court of Appeals rejected Haimbaugh's claim. Wrote Judge Hoffman:

> Before a defendant can be held liable for negligence, it first must be shown that the defendant owes a duty to the plaintiff. In the absence of a duty, there can be no breach of a duty and no negligence or liability based upon the breach of duty. [Citation omitted]. . . .
>
> Haimbaugh has not shown, nor has this Court been able to find, any authority for the proposition that a vendor's agent owes a duty to procure or furnish title insurance or a certified continuation of abstract to the purchaser. Rather, Haimbaugh maintains that he should recover because of the agent's negligence in performing the duty she owes to her principal. However, an agent who negligently fails to perform duties owed to her principal is not thereby liable to a person whose economic interests are thereby harmed. Restatement (Second) of Agency § 357 (1958).

482 N.E.2d at 487. Therefore, the Court of Appeals reversed the trial court's judgment in favor of Haimbaugh on his claim against Pat.

While *Wilson v. Haimbaugh* is not precisely on point, its teaching is nonetheless applicable to the instant case. Taylor did not owe a fiduciary duty to the McAdams.

His duty was to the Parnells. Absent a duty, there can be no breach and no negligence or liability based upon the breach of duty. *Id.*

In holding Taylor to such a duty, the Court of Appeals in *Edwards II* rejected Edwards Realtors' defense that the Purchase Agreement incorporated by reference Paragraph 13 of the land sale contract signed at closing, which allowed sellers to maintain a mortgage on the property. *See* 591 N.E.2d at 621–22. We agree with Judge Sullivan's concurring opinion in *Edwards II* when he said that "[t]he parties . . . contemplated that the existing mortgage might be 'maintained' on the premises so long as it never exceeded the amount due on the contract owing from the McAdamses." 591 N.E.2d at 624 (Sullivan, J., concurring). Where we depart from Judge Sullivan, however, is in fixing responsibility for the McAdams loss.

There is no question but that the McAdams were wronged. The real wrong was perpetrated by the Parnells, however, not by their agents. In a rather poignant exchange at trial, Mrs. McAdams was asked if she or her husband ever took steps to see that their contract payments to the Parnells were being applied to the Parnells' mortgage. She replied, "No, I guess that's where my trust was too great." (Record at 439). Mr. and Mrs. McAdams trusted the Parnells to keep their end of the bargain, but they signed a contract which left them exposed if the Parnells absconded. If Taylor had advised the McAdams during the closing to step back and consult with counsel before signing such a contract, the resulting harm might have been avoided. Because Taylor was the sellers' agent, however, the law does not hold him financially accountable for failing to do so.

We affirm the trial court.

DeBRULER, DICKSON and KRAHULIK, JJ., concur.

GIVAN, J., dissents without separate opinion.